UNITED STATES, Appellee

v.

MOSES W. PADILLA and WALTER J. JACOBS, Privates
First Class, U. S. Army, Appellants

1 USCMA 603, 5 CMR 31

No. 400
Decided August 19, 1952

LT. COL. Stewart H. Legendre, USA, and 1ST LT. Patrick H. Thiessen, USA, for Appellants.

LT. COL. Thayer Chapman, USA, and 1ST LT. Eugene L. Grimm, USA, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

This case is before us on petition for review granted that we might consider a substantial question of double jeopardy raised by the accused persons. Involved here are two trials for the same offense, the second of which has resulted in this appeal. Understanding of the issue involved requires that we set out chronologically and in detail the steps leading to, and the results of, both trials.

On May 1, 1951, petitioners, Jacobs and Padilla, were allegedly involved in an incident wherein several German civilians were assaulted by a group of American soldiers. As a result of this event, charges of assault with intent to commit robbery were preferred against both petitioners on May 12, 1951, and were referred for trial to the "General court-martial appointed by paragraph 3 Special Orders No. 116, Headquarters 1st Infantry Division 24 May, 1951." No copy of Special Orders No. 116 appears in the record of trial, but it is obvious from the date thereof that it created a court-martial under the authority granted by the Articles of War, 10 U.S.C. §§ 1472–1593. Subsequently on June 5, 1951, Special Orders No. 124 was promulgated and operated to appoint a general court-martial by virtue of the power vested in the convening authority by the Uniform Code of Military Justice, 50 U.S.C. §§ 551– 736, by that time in effect. Paragraph 1 of this document provided as follows:

"All unarraigned cases in the hands of the trial counsel of the general court-martial convened by paragraph 3, Special Orders No. 116, this headquarters, dated 24 May 1951,

will be brought to trial before the court hereby appointed."

On June 12, 1951, petitioners were brought to trial. On that same day the convening authority issued an additional order, Special Orders No. 128, which in pertinent part provided as follows:

"2. The following members are appointed to the General Court-Martial, convened by Paragraph 3, Special Orders Number 116, this headquarters, dated 24 May 1951 and as amended by Paragraph 1, Special Orders Number 124 this headquarters, dated 5 June 1951.

"CAPTAIN WOODROW W. PARKER, 01286880, Inf 16th Inf Regt

"CAPTAIN JAMES T. NICK, 01307063, Inf 16th Inf Regt"

Captains Parker and Nick sat as members of the court-martial, appointed by Special Orders No. 124, which tried petitioners. At this trial petitioner Jacobs was found not guilty. Petitioner Padilla was found guilty of assault with intent to commit robbery, however, and was sentenced to receive a bad-conduct discharge, to forfeit $50.00 per month for six months, and to be confined at hard labor for six months. The record of trial was then forwarded to the convening authority for review and action. That officer held that Captains Parker and Nick had not been lawfully appointed to the court which tried petitioners. This conclusion was based on the following reasoning. Special Orders No. 128 appointed the two captains to the general court-martial convened by Special Orders No. 116, whereas the tribunal in whose deliberations they participated, and which tried petitioners, derived its existence from Special Orders

**605**

No. 124. Without the presence of Parker and Nick, the court was reduced to a membership of less than five, the statutory minimum, thus depriving the forum of jurisdiction. Accordingly, the first trial was held a nullity and further proceedings were instituted.

Petitioners were brought to trial by general court-martial for the second time on July 6, 1951, under charges alleging the commission of the identical offense for which they had been tried earlier. Upon arraignment, defense counsel moved to dismiss the charge and specification against each accused on the ground of former jeopardy. This step was predicated on the position that the first court-martial had jurisdiction to try both petitioners, and did in fact try them. The motion was denied by the law officer and the accused stood mute. Pleas of not guilty were entered by direction of the law officer and the trial proceeded. At this further trial both petitioners were found guilty and each was sentenced to receive a dishonorable discharge from the service, to forfeit all pay and allowances, and to be confined at hard labor for four years. The findings and sentence were upheld on review, although both Jacobs and Padilla have constantly maintained that they were subjected to double jeopardy. The case was thereafter considered by a board of review in the office of The Judge Advocate General, United States Army, which affirmed without opinion.

The Uniform Code of Military Justice, Article 44(a), 50 USC § 619, provides that "No person shall, without his consent, be tried a second time for the same offense." It follows that if the proceedings commenced on July 6, 1951, constituted, legally, a second trial for the same offense, the law officer erred in denying the defense motion for dismissal. On the other hand, if the law officer in these proceedings, and the convening authority, were correct in holding that the first trial was a nullity, then it is certain that petitioners have not been subjected to double jeopardy. "Before a person can be said to have been put in jeopardy of life or limb the court in which he was

acquitted or convicted must have had jurisdiction to try him for the offense charged." Grafton v. United States, 206 US 333, 345, 51 L ed 1084, 27 S Ct 749, see Wade v. Hunter, 336 US 684, 93 L ed 974, 69 S Ct 834. This rule is expressly made applicable to courts-martial procedure by the Manual for Courts-Martial, United States, 1951, paragraph 68d. The issue before us, therefore, is to be resolved by decision as to whether the court-martial which tried petitioners on June 12, 1951, had jurisdiction to do so.

General courts-martial, being tribunals of special and limited jurisdiction, must be convened strictly in accordance with statutory requirements. Givens v. Zerbst, 255 US 11, 65 L ed 475, 41 S Ct 227; Dynes v. Hoover, 61 US 65, 15 L ed 838. Members of a court-martial must have been lawfully appointed thereto in order that they may enjoy status as members. Manual for Courts-Martial, supra, paragraph 61f. If Captains Parker and Nick were not properly detailed to the court, they may not be considered as members. This is consonant with existing service law. United States v. Machlin, 59 BR 343; United States v. Steward, 11 BR 385; United States v. Goggan, 49 BR 289. Indeed the Army has gone so far as to hold that participation in the deliberations of a court-martial by an officer not detailed thereto will per se render the proceedings invalid. See Dig Op JAG, 1912–30, § 1351, and cases cited supra. Here, however, we need only observe that without the presence of Captains Parker and Nick, the membership of the court was reduced to less than five persons, the statutory personnel minimum for general courts-martial. This would constitute a palpable jurisdictional defect. Uniform Code of Military Justice, Article 16(1), 50 USC § 576. That we may dispose of the issue of jurisdiction, it is, therefore, necessary to decide whether these two officers were legally appointed to the court.

It is apparent from a reading of Special Orders No. 128, set out earlier in pertinent part, that the captains were not in terms appointed to the court which tried petitioners. That body was

constituted by Special Orders No. 124, and Parker and Nick were appointed to the "court convened by . . . Special Orders No. 116." If this were all that appeared in the record on this subject, we would be required to conclude that they were not assigned to sit as members of the tribunal which tried petitioners. A proper order for that court would have appointed its members to the "court convened by Special Orders No. 124." However, it is noteworthy that the order appointing Parker and Nick went beyond directing appointment to the court established by Special Orders No. 116. It added with reference to the latter, "as amended by Paragraph 1, Special Orders Number 124." Thus the order referred on its face to two separate general courts-martial. Shall this ambiguity be resolved in favor of or against the present petitioners?

It is familiar learning that the meaning of a writing must be arrived at by ascertaining the intent of its author, if possible. This intent will ordinarily be found through a grammatical approach to the language of the writing itself. However, where, ▆▆▆▆▆ through ambiguity or otherwise, this method fails, resort must be had to its object and the circumstances of its preparation or promulgation. Hendrie v. Lowmaster, 152 F2d 83 (CA 6th Cir). Effort must be made to effectuate its purpose and to avoid rendering it absurd. See Union Pacific R. R. v. Mason City, etc. R. R. 222 US 237, 56 L ed 180, 32 S Ct 86; Lambur v. Yates, 148 F2d 137 (CA 8th Cir); Commissioner of Internal Revenue v. Hopkinson, 126 F2d 406 (CA2d Cir). Where alternative interpretations are possible, the more reasonable should be chosen. Dairymen's League Cooperative Ass'n v. Brannan, 173 F2d 57 (CA2d Cir).

In the case at bar there are several factors which, when considered jointly, indicate an intention on the part of the convening authority to appoint Parker and Nick to the court-martial which tried petitioners and to no other. Initially it is to be observed that the court appointed by Special Orders No. 116 was created under the Articles of War,

supra. This tribunal was without authority to try cases in which arraignment was had on or after May 31, 1951, the effective date of the Uniform Code of Military Justice, supra. On June 5, 1951, a new court was appointed by Special Orders No. 124. This forum, established under the Uniform Code, was expressly characterized as a substitute for that previously provided. It is material in this respect to observe that the order appointing Captains Parker and Nick referred to "Special Orders No. 116 . . . as amended by Paragraph 1, Special Orders Number 124." This language, however inartificial, indicates with clarity that the user regarded the second court as a replacement for the first. In view of the transitional character of the period during which these orders were issued, the language is strongly persuasive of the existence of an intention to appoint the two captains to the court-martial created by Special Orders No. 124.

Further, we believe that if the order be interpreted as urged by the Government, we are brought to a doubtful, possibly a meaningless, result. By May 31, 1951, the court-martial convened by Special Orders No. 116 had lost its authority for existence, save for the trial of cases in which arraignment had taken place prior to that date. The order appointing Parker and Nick bears date of June 12, 1951. We have much difficulty in accepting the notion that the convening authority intended to appoint these officers to a court that was certainly moribund at the time the action was taken, if in fact it existed for any practical purpose at all. See United States v. Springer, 33 BR (ETO) 375, 378.

A final element, while by no means conclusive, is worthy of mention. A recognized usage in court-martial procedure involves notice to prosecution authorities by defense personnel when it appears probable that an exercise of the right of challenge at the trial will reduce the membership of the court to a number below the authorized minimum. This is done, of course, to avoid during the hearing the delay necessitated by the appointment of additional

required members to the court. In the first trial of the instant case it is to be noted that defense counsel exercised peremptory challenges for each of the two accused—this without a single question, and as if according to pre-arranged plan. This action, without the addition of Parker and Nick, would have resulted in a court of only three members. Replacements were, therefore, necessary. Parker and Nick were appointed, in the ambiguous manner described above, on the very day the trial commenced. This factor, while wholly circumstantial, may properly be considered together with matters mentioned in preceding paragraphs—and fully supports the conclusion suggested by them.

Considering these various items together, and viewing them in the light of the ambiguous language used in the order, we think it may fairly be said that the convening authority intended by Special Orders No. 128 to appoint Captain Parker and Captain Nick to the court-martial which in fact tried the two petitioners. In a situation such as the present one we should give weight to substance, and should not unduly emphasize matters of form. Since we have decided that the Commanding General, 1st Infantry Division, intended to appoint the two questioned officers to the court-martial appointed by Special Orders No. 124, his order should be construed to effectuate that intent. Accordingly, we hold that they were authorized to sit as members of the tribunal which tried the accused. The court, therefore, had jurisdiction and its findings and sentence were valid.

In reaching a conclusion on this issue, we have given careful consideration to the service cases relied on by the Government. In our opinion these cases are readily distinguishable. In several of them there was no written authority whatever for participation in the trial by the persons whose membership was questioned. United States v. Machlin, supra, and United States v. Stewart, 11 BR 385, involved situations in which the order detailing an individual as a member of a court-martial was not published until after trial of the case in which the problem arose. In

608

United States v. Kasprzyk, 63 BR 1, the challenged order contained no patent ambiguity, as does that involved in the instant case. As pointed out by the board of review in that case, the order could have been carried out without in any way producing a meaningless or incongruous result. We have been referred to no service cases in which it has been held that, given an ambiguous order and a reasonably clear intent, the manifest intent should not be effectuated. Indeed, United States v. Springer, supra, appears to support the conclusion we have reached in the present case.

Since the court-martial which tried these petitioners on June 12, 1951, had jurisdiction, the action of the convening authority in ordering a retrial was improper. The finding of ▇▇▇▇▇ ▇ not guilty as to petitioner Jacobs is valid and binding on the Government. Therefore, his trial on July 6, 1951, for the same offense constituted double jeopardy in violation of the Uniform Code of Military Justice, Article 44(a), supra. It follows that the charge and specification on which the latter trial was based, and which resulted in this appeal, must be dismissed.

A more difficult question is posed in the case of petitioner Padilla. He was found guilty at the first ▇▇▇▇▇ ▇ trial. The Uniform Code of Military Justice, Article 44(b), supra, in prohibiting a second trial for the same offense, provides that "No proceeding in which an accused has been found guilty by a court-martial upon any charge or specification shall be held to be a trial in the sense of this article until the finding of guilty has become final after review of the case has been fully completed." Here the findings of guilty did not become final. Petitioner Padilla could not, therefore, successfully claim double jeopardy at the second trial.

What then is the posture of the case as to Padilla? It is clear at the outset that the second proceeding ▇▇▇▇▇ ▇ cannot be regarded as a new trial. See Article of War 53, 10 USC § 1525; Uniform Code

of Military Justice, Article 73, 50 USC § 660; Manual for Courts-Martial, US Army, 1949, paragraphs 101, 102; Manual for Courts-Martial, United States, 1951, paragraphs 109, 110. It is, therefore, apparent that the trial of July 6, 1951, must be regarded either as a rehearing of the original cause, or as "another trial" in the nature of a new and independent proceeding. The Uniform Code of Military Justice, Article 63(a), 50 USC § 650, permits the convening authority to order a rehearing in certain cases where the findings and sentence are disapproved—and the Manual for Courts-Martial, United States, 1951, paragraphs 89b and 92, treats in detail of the reasons for which such action may be taken. In addition, paragraph 92, supra, in its terminal portion on page 160 contains the following language:

"If the convening or higher authority finds the original proceedings to be *invalid* because of lack of jurisdiction (8) or failure of the charges to allege any offense cognizable by courts-martial (68b), such authority will, in his action, state the basis for declaring the proceedings *invalid*. For form, see appendix 14. In such a case *another trial* may be directed and such trial is not subject to the restrictions prescribed by Article 63b. However, such a case should be referred to a court none of whose members has participated in the former trial." [Emphasis supplied]

It is argued that the Manual thus provides for successor proceedings of two sorts: (1) a rehearing for procedural error, in which a sentence in excess of that originally imposed may not be assessed against the accused; (2) a new and independent trial, in which the second court-martial is not limited by the sentence imposed by the first. This interpretation of the language of paragraph 92 appears to be supported by certain significant differences between terminology used in early portions of the paragraph and that used in its ultimate section. See page 30 of House Report No. 491, 81st Cong, 1st Sess, on HR 4080, Uniform Code of Military Justice; pages 26, 27 of Senate Report No. 486, 81st Cong, 1st Sess, on HR 4080, ("A rehearing is a *continuation of the former proceeding*, and if the original court had no jurisdiction in the case, none of the restrictions of this article [Article 63] apply to a *subsequent* trial on the same charges." [Emphasis supplied]). On the other hand, it is suggested that there was no intention whatever on the part of Manual draftsmen to provide for a proceeding in the nature of an independent trial, but instead merely to specify two grounds on the basis of either of which a rehearing might be ordered: procedural error during the first trial and want of jurisdiction in the original court-martial. Additionally, under this latter interpretation, it was provided, of course, that as to rehearings ordered on the first ground the second sentence must be limited by the initial one, whereas no such limitation exists as to those directed for want of jurisdiction. This approach, too, is not without support. In the first place, proceedings based on both procedural error and want of jurisdiction are treated within a single paragraph of the current Manual the title of which is "Ordering rehearing." In the second, it would have been a comparatively simple matter to have provided clearly and explicitly for a new and independent trial in the case of jurisdictional error, had this been the intention of Manual draftsmen.

It is genuinely difficult to regard the second trial here as a rehearing within the meaning of language used in Article 63, supra, and early portions of paragraph 92 of the Manual. The convening authority did not purport to "disapprove" the findings and sentence, as suggested therein. Instead, the *"proceedings,* findings and sentence" [emphasis supplied] were declared "invalid" and "another trial" was ordered. This step was not taken for procedural irregularity, but manifestly for want of jurisdiction—although the word "jurisdiction" was not used in the convening authority's action. The fact that petitioner Jacobs, who was found not guilty, and as to whom action under Article 63, supra, could not have been taken lawfully, was ordered tried in the

**609**

second proceeding also militates against a treatment of the additional trial as a rehearing for procedural error. Finally, it will be remembered that petitioner Padilla was sentenced following the further hearing to dishonorable discharge, total forfeitures, and confinement for four years—punishment much in excess of that accorded at the first trial. See Article 63(b), supra.

It is clear that the convening authority here must be regarded as having adopted the analysis of paragraph 92, supra, first mentioned above, and as having intended in his action to order a proceeding in the nature of a totally new and independent trial for failure of jurisdiction in the first court. Because of this, and in view of the contentions of petitioners at the second trial, and before this Court as well, it has been necessary that we determine the question of jurisdiction of the court-martial by whose members the case was heard initially. As a result of our consideration of this problem, we reached the conclusion that this latter forum had jurisdiction, and that the hearing before it resulted in findings and a sentence which are entirely legal. It followed that the action of the Commanding General, 1st Infantry Division, in directing further proceedings in the cause was improper and without legal justification.

It has been suggested that because of our holding as to jurisdiction of the first court-martial, and our reasons therefor, we are permitted to accord no sort of validity to the second proceeding. Therefore—the argument continues—we have no choice but to dismiss the charges and specifications on which this latter trial was based. However, at the same time it is conceded that we are without authority to reinstate the findings and sentence of the earlier proceeding for the reason that this Court is prohibited from taking action with respect to findings and sentence set aside by the convening authority. See Uniform Code of Military Justice, Article 67(d), 50 USC § 654. It is apparent that the product of this reasoning is the conclusion that, as matters stand, the case as to Padilla

is left suspended in mid-air with no valid proceedings on which further juristic action may be based. We cannot accept this position as a matter of theory. Moreover, as a practical matter we have every wish not to find ourselves impaled on the horns of this particular dilemma.

An alternative to the argument outlined immediately above has been proposed. Under this theory it is urged likewise that we are without authority to reinstate the findings and sentence of the first court-martial, and that those of the second proceeding must also be dismissed for want of jurisdiction. At this point, however, the two offered approaches part company. The earlier concludes, as has been seen, that there are no valid proceedings on which further action by *any agency* of military justice may be based. On the other hand, the second argues that, although there are no proceedings on which further action *in this Court* may be taken, it does not follow that such action may not be taken elsewhere—by the convening authority in this case, in fact. This conclusion is predicated on an interpretation of the Manual for Courts-Martial, supra, paragraph 89b, pertinent language from which is set out below:

"... When, as an incident of the review of a record of trial pursuant to Articles 65b, 66, or 67, or examination of a record of trial pursuant to Article 69, any incomplete, ambiguous, void, or inaccurate action of the convening authority is noted, such action will be modified by him in accordance with the advice or instructions of a higher reviewing authority or the Judge Advocate General. ..."

Under this interpretation of the quoted language it is urged that, although the convening authority's action here was neither ambiguous, nor inaccurate, it is either totally void or it is incomplete, in that it does not reflect consideration of the record of trial from the standpoints of sufficiency of evidence, absence of procedural error, and legality and appropriateness of sentence. In view of the holding of

this Court on the issue of jurisdiction—it is argued—the convening authority should be afforded an opportunity to deal with these matters, and in a proper case, to modify his previous action in the direction of approval. We can accept this view no more readily than we could approve its variant treated earlier herein. We are convinced that the convening authority's action was not void. Additionally we are unable to agree that, as used in paragraph 89b, the term "incomplete" permits the interpretation thus given it, but rather that, as a matter of grammar, it was intended to modify the word "action" and has no reference whatever to the *consideration* of the convening authority which led to the action he took.

We do not find it necessary to a solution of the present problem that we determine whether the ▮ Manual for Courts-Martial, supra, provides for a rehearing in these premises or for an entirely new and independent proceeding. Whatever may have been its character, and whether with or without legal justification, the convening authority did in fact direct a further trial in this case—and in fact a second nisi prius hearing was held. This he had unqualified power and authority to do— quite apart from any conclusion we might ultimately reach concerning the legal soundness of the reasons for his action. We are seeking to distinguish here between two totally different conceptions: that of "power" and that of "duty." We quite agree that the convening authority was under a *duty* not to direct for the reasons assigned a second trial in this case. They were bad reasons, and it was his duty to act under the law. However, this is not to say that he was without *power* to do what he did. See Fauntleroy v. Lum, 210 US 230, 52 L ed 1039, 28 S Ct 641; Burnet v. Desmornes, 226 US 145, 57 L ed 159, 33 S Ct 63; The Fair v. Kohler Die Co. 228 US 22, 57 L ed 716, 33 S Ct 440. In the first of these cases Mr. Justice Holmes speaking for the Court in a somewhat different but distinctly related situation, said at pages 234, 235:

"No doubt it sometimes may be difficult to decide whether certain words in a statute are directed to jurisdiction or to merits, but the distinction between the two is plain. One goes to the power, the other only to the duty of the court. Under the common law it is the duty of a court of general jurisdiction not to enter a judgment upon a parol promise made without consideration; but it has the power to do it, and, if it does, the judgment is unimpeachable, unless reversed. . . ."

Had the convening authority in a similar case clearly directed a rehearing for fancied, but nonexistent, procedural error, it could scarcely be argued that he had no power to do so, by reason of the incorrectness of his view as to the presence of prejudicial procedural irregularity. We recognize no necessity for distinguishing this situation from the one at bar. In our view there is no magic in the word "jurisdiction," nor any element of supernaturalism in the idea it connotes. To our minds, too, a convening authority has just as much power to make an erroneous decision in the area of jurisdiction as he has in those of procedure or trial administration. Moreover, it should "cost him" no more to make one sort of mistake than the other.

If the Commanding General, 1st Infantry Division, possessed power to direct the further proceeding, then in our opinion his exercise of this authority conferred jurisdiction on the second court-martial here. However, in part, the Uniform Code of Military Justice, Article 63(b), provides as follows:

". . . Upon such rehearing the accused shall not be tried for any offense of which he was found not guilty by the first court-martial, and no sentence in excess of or more severe than the original sentence shall be imposed unless the sentence is based upon a finding of guilty of an offense not considered upon the merits in the original proceedings or unless the sentence prescribed for the offense is mandatory."

It is apparent that petitioner Padilla was not found guilty at the second trial

of an offense not considered in the original proceeding, nor ▮ was the sentence prescribed for the offense of which he was convicted mandatory. It follows from the language of Article 63 (b) that the sentence imposed on him at the termination of the second hearing may not lawfully exceed a bad-conduct discharge, confinement at hard labor for six months, and a forfeiture of $50.00 per month for six months—that accorded him at the earlier proceeding. It is noted that this accused has already served confinement far in excess of that ordered there.

In this connection our attention has been directed to the Manual for Courts-Martial, supra, paragraph ▮ 92, page 160, quoted earlier herein. This paragraph provides in substance that the limitation as to sentence prescribed by Article 63(b), supra, shall have no application to a second trial ordered for want of jurisdiction in the first court-martial. In our opinion this Manual language is inconsistent with nothing we have said. True it is that the convening authority ordered the proceeding under scrutiny on the ground of a want of jurisdiction in the first court-martial. It is also true, however, that we have held this action was unwarranted and that the court which tried petitioners on June 12, 1951, was not without jurisdiction to do so. Certainly *we* have power to review the legal propriety of the action of the convening authority in this particular—and we have done so. Any other conclusion as to the authority of this Court and the result of its exercise would be unsound legally and unthinkable practically. We have already expressed our views as to petitioner Jacobs, and they are supported not only by the quoted provision of Article 63(b), supra, but by that of Article 44(a), as well.

Accordingly, the decision of the board of review is reversed and the records of trial are remanded to The Judge Advocate General, United States Army, for reference to the board of review which previously considered the case, and other action not inconsistent with this opinion.

LATIMER, Judge (concurring in the result):

I concur in the result.

Conceding for the purposes of argument, that the writers of the Manual attempted to distinguish between a rehearing based on procedural error and "another trial" based on lack of jurisdiction, I would not perpetuate the distinction. To do so tends to confuse what can be orderly procedure for the sole purpose of asserting refined concepts of jurisdiction.

Article 63 of the Code, 50 USC § 650, provides as follows:

"(a) If the convening authority disapproves the findings and sentence of a court-martial he may, except where there is lack of sufficient evidence in the record to support the findings, order a rehearing, in which case he shall state the reasons for disapproval. If he disapproves the findings and sentence and does not order a rehearing, he shall dismiss the charges.

"(b) Every rehearing shall take place before a court-martial composed of members not members of the court-martial which first heard the case. Upon such rehearing the accused shall not be tried for any offense of which he was found not guilty by the first court-martial, and no sentence in excess of or more severe than the original sentence shall be imposed unless the sentence is based upon a finding of guilty of an offense not considered upon the merits in the original proceedings or unless the sentence prescribed for the offense is mandatory."

Under the provisions of the above-quoted section, the convening authority is granted the power to disapprove findings and sentence, and, while in this instance he did not state in precise words that he was so doing, implicit in his sending the case back to be retried, is a disapproval of the previous proceedings, including findings and sentence.

As stated by Judge BROSMAN, proceedings are not left in mid-air and a

convening authority cannot escape the legal effect of his ruling by silence. Under military legal principles, he is entitled in reviewing a case to make a determination of the question of jurisdiction of the court-martial. He may decide this question either correctly or incorrectly. If his decision is correct in law, then under the usual concepts of criminal law, the trial, findings and sentence are void. The second trial, in that event, can be designated a rehearing but it is not one in the sense of trying the issues a second time, as the first trial is a nullity and there is no carry-over to the subsequent hearing. However, if the convening authority rules incorrectly, he has committed an error in law and his ruling amounts to no more than an order granting a rehearing. Such a ruling does not render the first trial void and it remains as a part of the entire proceedings. Its legal effect has been impaired, and, it cannot be used as a basis to support findings and sentence; but under the express wording of the Code, the findings and sentence are a part of the subsequent proceedings to the extent of controlling the charges which can be tried and the punishment which can be imposed on a subsequent conviction.

In the instant case the second court-martial could legally try the issues and return a finding of guilty as to Padilla but the maximum punishment imposable was circumscribed by the sentence returned by the first court. Insofar as appellate procedure is concerned, the entire record is subject to review to determine whether the substantial rights of the accused have been impaired.

Quinn, Chief Judge (concurring in part, dissenting in part):

I agree that petitioner Jacobs' plea of double jeopardy must be sustained. Further, I agree that there is basis in this record for an affirmance through proper action by proper authority of the sentence that was accorded petitioner Padilla at the first trial. If it were not for the fact that the majority embodies in its opinion a new and, I think, possibly dangerous concept, I would not feel called upon to make my individual position clear.

The majority reasoning, as to Padilla, is as follows: (1) The first court which tried Padilla had jurisdiction to do so and arrived at legal and valid findings and sentence; (2) The convening authority erred in holding that this court had no jurisdiction and in ordering a second trial; (3) The convening authority did not, in fact, purport to order a rehearing; (4) The second trial was not held as a rehearing; (5) Despite (3) and (4) the second trial may be treated as a rehearing; (6) Validity may be given to the findings as to Padilla at the second trial; and (7) So much of the sentence resulting from the second trial as does not exceed that given at the first trial may be affirmed, presumably, by an army board of review. The crucial point in this chain of reasoning lies in step five, and is apparent from the following sentence of the majority opinion: "Whatever may have been its [the second trial's] character, and *whether with or without legal justification,* the convening authority did *in fact* direct a further trial in this case—and in fact a second *nisi prius* hearing was held." [Emphasis supplied] Thereafter, the majority relies upon inapplicable civilian precedents for the establishment of a non-existent line between "power" and "duty" in order to give practical validity to a trial for which there is no legal support. After demonstrating quite clearly the legal impossibility of the result achieved, the majority disregards its own reasoning in order to avoid an imaginary dilemma and reach a desired result. While practical expediency may justify disregard of principles in other fields, such a doctrine has no place here. I shall point out what I conceive to be the error into which the majority has fallen and then demonstrate the dangers which may possibly follow.

First, I trust that no one reading the majority opinion can doubt the solution to the basic issue in this case. It is quite clear, from the provisions of the Code and the Manual and from the legislative history of the Code—all of which are cited by the majority—that

**613**

there is a legal and practical difference between a "rehearing" ordered for procedural error, and "another trial" ordered for jurisdictional defect in the original proceedings. Further, it is equally as clear—and again admitted by the majority—that the second trial here was correctly recognized by all to be a new and independent proceeding, not a rehearing of the original cause. If there is, legally, an "independent proceeding" as differentiated from a rehearing, and if the second trial in this case was such a proceeding, then, the convening authority having admittedly erred in ordering the second trial, the court at that trial had no jurisdiction to proceed and no effect can be given to the findings and sentence resulting therefrom.

I quite agree that legal effect can properly be given to the result of a rehearing ordered for fancied but nonexistent procedural error. But this only because, in the language of the Congressional draftsmen of the Code, a rehearing is a "continuation of the former proceeding." It is a universally recognized concept that, jurisdiction having once attached, it is not thereafter lost because of procedural error. The rehearing constituting, in legal effect, a continuation of the first trial, and jurisdiction having been acquired at that trial, the action of the convening authority in wrongly assessing procedural error does not deprive the court of jurisdiction.

Not so, however, where the convening authority purports to order a new and independent proceeding. This court-martial cannot rely, for its jurisdiction, upon its predecessor. It is as if that prior trial never occurred. At this second trial, therefore, the court must be ordered and constituted strictly in accordance with the law. There is, in military law, no presumption of jurisdiction such as attaches to courts of general jurisdiction. Fauntleroy v. Lum, 210 US 230, 52 L ed 1039, 28 S Ct 641, and the other federal cases relied upon by the majority to draw a distinction between "power" and "duty," in so far as authority to convene a court is concerned, have no application here. Those cases involve courts of general jurisdiction. Courts-martial are courts of special jurisdiction, and must be convened strictly in accordance with the law. See United States v. Emerson (No. 77), 1 USCMA 43, 1 CMR 43, decided November 14, 1951; United States v. Goodson (No. 424), 1 USCMA 298, 3 CMR 32, decided April 14, 1952. "Power" to order the trial cannot, therefore, be divorced from the "reasons" which, by statute, give birth to that power. The law allows the convening authority to order a "new and independent proceeding" where the first court was without jurisdiction. If the first court had jurisdiction, there is no authorization in the law for ordering the "new and independent proceeding." If there is no authorization in the law for the ordering of the second trial, then the court which conducts that trial can have no legal existence.

It follows automatically that no legal effect can be given to the findings and sentence which resulted from the second trial. In so holding, I do not find myself impaled on the horns of any dilemma. The obvious answer is suggested by the majority opinion. As noted therein, the first trial resulted in perfectly valid findings and sentence as to petitioner Padilla. Article 67(d) of the Code, 50 USC § 654, provides that "In any case reviewed by it, the Court of Military Appeals shall act only with respect to the findings and sentence as approved by the convening authority and as affirmed or set aside as incorrect in law by the board of review." The findings and sentence of the first trial in this case were not approved by the convening authority. They were not, on the other hand, disapproved. As the majority recognizes, the convening authority did not reach in his action the validity of the findings and sentence. Without legal justification, in the words of the majority, he held the first proceedings to be a nullity. I think that it is not only the Court's prerogative but the Court's duty to return this record to the convening authority for completion of his review of the findings and sentence resulting from the first trial. It is a simple fact, demonstrated above, that those findings and sentence are the

only ones upon which further action as to petitioner Padilla may be taken.

It is, of course, obvious that in practical result this conclusion differs little from that reached by the majority. Everyone agrees that petitioner Padilla was properly found guilty (at one trial or the other) and that the only sentence which can possibly be approved is that given at the first trial. The majority would reach this conclusion by allowing a board of review to act on the findings and sentence given at the second trial; I would require the convening authority to act on the findings and sentence as given at the first trial.

As earlier stated, I would recognize this difference in reasoning to be formal and possibly inconsequential were it not for the harm which might result from the majority opinion. First, although the term is not used and although the majority has endeavored to conceal it, the opinion recognizes the validity of a court-martial trial on a de facto basis. The opinion seems to say that regardless of the possible—or, indeed, probable—lack of legal justification for a second trial in this case, and regardless of the fact that no one conceived it to be or treated it as a rehearing, it was a rehearing in fact and therefor may be treated as such in law. I cannot subscribe to this theory. Either there is jurisdiction or there is not jurisdiction; either a trial is legally held or it is not legally held; either a court has de jure existence, or else it has no legal existence. I emphasize again that we are not here dealing with courts of general jurisdiction. Will the majority hold that, even though the requirements of the law are not observed in relation to formation and constitution of a court-martial, legal effect may be given to its actions if only it boldly sits as a court and tries an accused? This is carrying the desirable emphasis of substance over form too far. There are sound and valid reasons, both historical and present, for the rule that courts must have jurisdiction before any legal effect can be given to their actions. There are equally sound and valid reasons for the rule that special tribunals must be convened strictly in accordance with the law. The majority ignores this rule for—as frankly admitted—reasons of practical expediency. I suggest that there will be other cases in other times where the majority will be considerably troubled by this new and startling doctrine of de facto jurisdiction.

In my opinion, the majority reasoning leaves the door open to arbitrary action by the convening authority. Let us suppose that an accused is tried for an offense, but that the prosecution completely fails to establish a prima facie case. Nevertheless, the court finds the accused guilty. The convening authority, recognizing the absolute lack of sufficient evidence to support the findings, but desirous of having this particular person legally convicted of the crime charged, holds that the court had no jurisdiction because the members of the court-martial were not dressed in the uniform of the day. He orders a "second trial." Prior to this second trial, he insures that a more effective case will be presented by the prosecution. The trial counsel at the second trial produces valid and convincing evidence of guilt. The convening authority approves the findings and sentence, and the board of review affirms. The accused comes to this Court with the argument that, because of erroneous and arbitrary action by the convening authority, he was deprived of his right to have the first proceedings reviewed and the charges dismissed for lack of sufficient evidence. It is quite clear that the drafters of the Code did not intend to allow military authorities to have more than one opportunity to present sufficient evidence to convict an accused. Yet, the majority opinion handed down today would prohibit this Court from giving any relief to the accused. Legal effect would be given to the findings resulting from the second trial, and the first trial—the only proper one held—would be ignored. In my opinion, such a result would be inconsistent with the policy of the Uniform Code of Military Justice, 50 USC §§ 551–736.

For the reasons expressed above I would order the charge and specification as to petitioner Jacobs dismissed,

and would remand the case as to petitioner Padilla to the convening authority for further action consistent with the views set forth herein.