UNITED STATES, Appellant,

v.

Devin S. BRINSTON, Sergeant, U.S. Air Force, Appellee.

No. 64,123.
ACM 27269.

U.S. Court of Military Appeals.

Argued May 10, 1990.

Decided Sept. 26, 1990.

For the Accused: *Captain Ronald A. Gregory* (argued); *Colonel Richard F. O'Hair* (on brief).

For the United States: *Major Paul H. Blackwell, Jr.* (argued); *Colonel Robert E. Giovagnoni* (on brief).

*Opinion of the Court*

EVERETT, Chief Judge:

On review of the accused's general court-martial conviction for failure to repair (5 specifications), wrongful use of marijuana, assault and battery, and bank fraud (2 specifications),* the Court of Military Review held that the charges against Brinston had been improperly referred to trial by a person who lacked authority to convene a general court-martial. 28 MJ 631 (1989). Accordingly, the court set aside the findings and sentence and authorized "an 'other' trial" under RCM 1107(e)(2), Manual for Courts–Martial, United States, 1984. 28 MJ at 633.

The second time around, the general court-martial, consistent with the accused's pleas, convicted him as it had the first time and sentenced him to a bad-conduct discharge, confinement and forfeiture of $450.00 pay per month for 16 months, and reduction to the lowest enlisted grade. The convening authority approved these results except for confinement exceeding 6 months and 1 day.

Again the Government did not fare well before the Court of Military Review. In its

---

* *See* Arts. 86, 112a, 128, and 134, Uniform Code of Military Justice, 10 USC §§ 886, 912a, 928, and 934, respectively.

review of this second court-martial on the original charges, a majority of the panel of that court agreed with both defense and government counsel that the convening authority had ordered the charges dismissed after their rereferral and that, accordingly, the second conviction, like the first, was a nullity. 29 MJ 871 (1989). The majority rejected the view of the dissenting judge (*id.* at 873) that the "dismissal" was merely an "administrative error" and that the intent of the convening authority to refer the charges to "an 'other' trial" was quite clear from all the circumstances. Instead, the majority decided that the dismissal was effective, "[w]hether or not intended." *Id.* at 872.

Accordingly, the court set aside the findings and sentence. Additionally, the court observed:

> Since this is appellant's second trial on these charges and the results of both trials have been set aside because of defects in the government's processing of the case, in the interest of fairness and judicial economy, another trial is not appropriate. *United States v. Stroup,* 29 M.J. 224 (C.M.A.1989).

29 MJ at 872.

Apparently reflecting a change of heart, government counsel filed with the court a Suggestion for Reconsideration (En Banc) of the panel's decision, which was denied. Then, the Judge Advocate General certified two questions to this Court for review: The first challenges the correctness of the Court of Military Review's decision that the convening authority had, as a matter of law, dismissed the charges after rereferral; and the second asks whether the concluding language ("another trial is not appropriate") of the majority opinion, cited above, bars the Government from retrying the accused.

We decide that the court did err, as a matter of law, in holding that the charges against the accused had been dismissed by the convening authority. In light of the answer to this first question, the second need not be addressed.

**I**

While application of the law in this controversy is in dispute, the facts are not.

The Court of Military Review set aside the first findings and sentence on March 23, 1989, and returned the record to the convening authority for action consistent with that opinion. On March 29, the special court-martial convening authority, after reviewing the report of the original investigation under Article 32, Uniform Code of Military Justice, 10 USC § 832, and the pretrial advice "recommend[ed] the case ... be referred to a General Court–Martial for an 'other trial' as authorized by the" appellate court; the staff judge advocate had made an identical recommendation earlier on the same date.

The convening authority agreed, stating in an indorsement to the Transmittal of Court–Martial Charges dated April 3, 1989:

> I have carefully reviewed the Report of Investigation dated 12 August 1988 and the advice of the Staff Judge Advocate. I hereby order that the charges and specifications in the case of Sgt Devin S. Brinston be tried by a General Court–Martial.

Special Order A–1031, which convened the general court-martial to which the accused's case was referred for trial, was signed on April 4, 1989.

Two days later, though, the accused sent the convening authority a Request for Discharge in Lieu of Trial by Court–Martial. In that document, the accused acknowledged that "I understand the elements of the offenses with which I am charged" and that he had "received copies of the ... Charge Sheet dated 4 April 1989." In a memorandum dated April 14, 1989, the staff judge advocate noted that the accused's commander and the special court-martial convening authority both recommended to the convening authority "that this request be rejected" and that he concurred. On April 21, the convening authority stated in a letter: "The request for discharge in lieu of court-martial submitted

by SGT Devin S. Brinston is denied. Court–Martial will proceed as scheduled."

The order of the convening authority that underlies this appeal was promulgated on April 20, 1989—one day before the convening authority denied the accused's request for discharge in lieu of court-martial. General Court–Martial Order No. 3, with the staff judge advocate signing "FOR THE COMMANDER," stated:

In the general court-martial case of SERGEANT DEVIN S. BRINSTON, ... the findings of guilty and the sentence as promulgated by General Court–Martial Order No. 1, this headquarters, dated 9 November 1988, were set aside on 23 March 1989. *The charges are dismissed. All rights, privileges, and property of which the accused has been deprived by virtue of the findings of guilty and the sentence so set aside will be restored. A rehearing has been ordered before another court-martial which has been designated.* The sentence was adjudged on 27 September 1988. (ACM 27269)

(Emphasis added.)

## II

### A

It is apparent, of course, that the emphasized language of GCMO No. 3 sends two opposing signals—that the charges are dismissed and that the charges will be tried at a rehearing that already has been ordered, by a court-martial that already has been designated.

It also is apparent how this anomaly occurred. Appendix 17, Manual, *supra,* contains several "Forms for Court–Martial Orders," one set of which is "for supplementary orders promulgating results of affirming action." *See* App. 17b. One of the forms in this set may be used when, as was the situation in the accused's first appeal, the findings and sentence have been set aside.

In such an instance, two courses typically are open to the convening authority: dismissal of the charges or having a rehearing on them. The particular form order in question provides for both alternatives, with parentheses around each to indicate that the drafter of the order *should choose one or the other.* Unfortunately, the drafter of GCMO # 3 omitted to select the appropriate option and, instead, included both opposing provisions in the same order. Equally unfortunately, no one noticed this error until the Court of Military Review did so and specified the matter for briefs of the parties. Had it been noticed at some earlier point, apparently it easily could have been corrected. *See* 29 MJ at 872 n.1, citing para. 17–1e, AFR 111–1.

### B

As already indicated, the majority of the Court of Military Review concluded that saying "[t]he charges are dismissed" means exactly what that plain language says, "[w]hether or not intended," and that this sentence divested the court-martial of jurisdiction over the dismissed charges. *Id.* at 872. The Government in this Court counters that, while that sentence may be clear, the order as a whole is ambiguously inconsistent internally. Accordingly, the Government reasons, it is appropriate to look outside of that order, at all the surrounding circumstances, to determine which of the two alternatives the convening authority actually intended. On the other hand, the accused strenuously resists this invitation to ignore the clear language of the sentence dismissing the charges. In support of the majority opinion below, the accused contended in oral argument in this Court, "No amount of intent of the parties can create jurisdiction where none exists."

The majority of the Court of Military Review and the Government in this Court rely heavily on *United States v. Motes,* 40 CMR 876 (ACMR 1969). In that case, the staff judge advocate in his pretrial advice had recommended that several specifications be dismissed prior to referring the remainder of them to trial; the convening authority had agreed. Thereafter, though, the accused had submitted a pretrial agreement in which he had offered "to plead guilty to *all* ... specifications" except one,

in return for a specific limitation on the approved sentence. The convening authority had agreed to this, as well.

At trial, the accused had entered pleas consistent with his pretrial agreement. The charge sheet, however, had reflected that all of the specifications that the staff judge advocate had recommended be dismissed had been lined through. In explanation, the second page of the charge sheet had contained a notation signed by trial counsel that all specifications, except the one to which the accused had not agreed to plead guilty, had been "inadvertently lined through" and that "the accused will be tried on all specifications and charges except the" one to which he had not agreed to enter a guilty plea. *Id.* at 878.

The Court of Military Review concluded that, after he had agreed with the staff judge advocate's advice to dismiss several of the specifications before referring the rest to trial—and, indeed, after he had done exactly that in his referral of the charges—the convening authority had nowhere properly countered that order, notwithstanding the subsequent pretrial agreement to the contrary. Inasmuch as the lined-through specifications had never been "properly referred to trial," the court dismissed them. *Id.* at 879.

On these facts, though, *Motes* is inapposite. The challenged specifications in that case never had been properly referred to trial; here, of course, that is not the case—quite clearly, the convening authority, prior to promulgating GCMO # 3, had rereferred the original charges to "an 'other' trial."

This is also not a case in which, subsequent to the rereferral, the convening authority single-mindedly ordered some other action. Indeed, as government counsel acknowledged in oral argument before us, if GCMO # 3 had stopped after the sentence purporting to dismiss the charges, "We would not be standing here today." In such a case, the order plainly would speak for itself, and we would not search outside of that order for some conjectured "intent" to the contrary. *See United States v. Ware,* 5 MJ 24 (CMA 1978).

Instead, this is a case where all prerequisites to court-martial jurisdiction have been met, including rereferral of the charges by a proper convening authority to a properly convened court-martial, and where the convening authority subsequently promulgates an order which is internally ambiguous regarding his intent.

In this respect, this case is conceptually similar to that before the Court in *United States v. McDaniel,* 7 USCMA 56, 21 CMR 182 (1956). There, the accused had received a sentence from a special court-martial that had included a bad-conduct discharge, as well as confinement, forfeitures, and reduction in grade. In his action on the findings and sentence, the convening authority had not explicitly approved the discharge but, instead, had approved "only so much of the sentence as provides for" the remaining elements of the sentence.

Later in the same order, however, the convening authority had stated that "execution of that portion ... [of the sentence] adjudging bad conduct discharge is suspended...." Of course, the discharge could not have been "suspended" unless, first, it had been approved. Consistent with this implicit approval of the discharge, the convening authority then had concluded his order by forwarding the case "for action under Article 65(b), UCMJ." *Id.* at 57, 21 CMR at 183. Article 65(b), 10 U.S.C. § 865(b), as in effect at that time, required a special court-martial convening authority to forward any record of trial that contained an approved "bad-conduct discharge, whether or not suspended, ... to the" general court-martial convening authority for review.

Thus, in the same order, the convening authority had signaled, first, an intent not to approve the punitive discharge and, then, an intent to approve it but to suspend its execution.

The Court first noted, "We are not dealing here with two instruments that are separate in time, circumstance, and content. There is only one instrument."

Then, the opinion set out the legal principles that would govern its approach:

> This Court has frequently pointed out that a writing should be construed to give meaning and effect to all its provisions. *United States v. Gray,* 6 USCMA 615, 620, 20 CMR 331; *United States v. Padilla,* 1 USCMA 603, 5 CMR 31; *United States v. Lucas,* 1 USCMA 19, 22, 1 CMR 19. When alternative constructions are possible "the more reasonable should be chosen." *United States v. Padilla, supra,* 607.

Chief Judge Quinn concluded: "Applying these ... principles ... it incontrovertibly appears that the convening authority's action implied approval of the discharge...." *Id.* at 59, 21 CMR at 185.

Our approach in *McDaniel* to discern the convening authority's true intent from an order that was internally ambiguous due to inconsistency between its parts follows generally accepted rules of construction. *See generally* 2A *Sutherland Stat. Const.* §§ 46.05 (4th ed.1984 rev.) (legislative intent in enacting a statute should be gleaned from the statute as a whole rather than from any of its parts) and 47.02(4) ("the entire act must be read together because no part of the act is superior to any other part" (footnote omitted)); K. Llewellyn, "Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes are to be Construed," 3A Sutherland, *supra* at 207 ("Statutes in pari materia must be construed together." (Footnote omitted.))

The accused has cited *United States v. Bass,* 404 U.S. 336, 347–48, 92 S.Ct. 515, 522–23, 30 L.Ed.2d 488 (1971), in urging us to follow, instead, the "rule of lenity"— that is, broadly stated, where a writing lends itself equally to two different readings, the choice should be that reading which is least harsh to the accused. We conclude, though, that the policies underlying that principle, which the Court discussed there, do not apply in this context.

### C

While, as we discussed earlier, the two parts of GCMO #3 seem to be diametrically inconsistent, there is one wrinkle inside the four corners of that order which suggests the more reasonable construction of what the convening authority intended.

The form order in Appendix 17b of the Manual, from which GCMO #3 was patterned, provides alternatively: "(The charges are dismissed.... )(A rehearing *is ordered* before another court-martial *to be designated.*)" (Emphasis added.) By comparison, GCMO #3 stated: "The charges are dismissed.... A rehearing *has been ordered* before another court-martial *which has been designated.*" By modifying the language as emphasized above, the convening authority affirmatively indicated his awareness of his earlier rereferral of the original charges to a general court-martial that he had already convened. We are satisfied that, in this way, the convening authority implied his intent that "an 'other' trial" be held on the original charges, rather than an intent that those charges be dismissed.

Concededly, if all the surrounding circumstances and events that occurred once these charges were returned to the convening authority convincingly indicated to the contrary, our confidence in this construction of GCMO #3 might be shaken. On the contrary, though, every single event that transpired from the moment the charges were returned up through and after the other trial all shout for this construction of that order. For example, it seems highly unlikely that the convening authority would have acted on Brinston's request for a discharge in lieu of court-martial if he had intended on the preceding day to dismiss the charges. *Cf. United States v. Wilkins,* 29 MJ 421, 424 (CMA 1990) (convening authority's entering into a pretrial agreement providing for guilty pleas to offenses that had not formally been referred to a court-martial "was the functional equivalent of an order by the convening authority that the charges be referred to the court-martial for trial").

### III

Accordingly, the first certified question is answered in the affirmative; as a result,

we need not answer the second, so we decline to do so.

The decision of the United States Air Force Court of Military Review setting aside the findings and sentence is reversed. The record of trial is returned to the Judge Advocate General of the Air Force for submission to that court for further review.

Judges COX and SULLIVAN concur.