UNITED STATES, Appellee

v

RALPH ESTELL COTHERN, Seaman Apprentice,
U. S. Navy, Appellant

8 USCMA 158, 23 CMR 382

No. 9580

Decided July 19, 1957

*Major R. D. Humphreys*, USMC, argued the cause for Appellant, Accused.

*Lieutenant Colonel Charles H. Beale, Jr.*, USMC, argued the cause for Appellee, United States. With him on the brief was *Commander Guilbert W. Martin*, USN.

## Opinion of the Court

HOMER FERGUSON, Judge:

Despite his plea to the contrary, Ralph Estell Cothern, a seaman apprentice in the United States Navy, was tried and convicted of desertion and failure to obey a lawful order, in violation of Articles 85 and 92, Uniform Code of Military Justice, 10 USC §§ 885 and 892, respectively. He was sentenced to be discharged from the service with a bad-conduct discharge, to forfeit all pay and allowances, to be confined at hard labor for one year and six months, and to be reduced to the grade of seaman recruit. The convening authority, after providing that forfeitures should apply to pay and allowances becoming due on and after the date of his action, approved the findings and the sentence. A board of review affirmed the findings and sentence as approved below. This Court granted petition for review on the single following issue:

"Whether the law officer erred by permitting the court-martial to base a finding of guilty of desertion upon the theory that seventeen days was a much prolonged absence."

At trial, evidence was introduced by the prosecution which showed that the accused had been the subject of a series of absences most of which had been terminated by apprehension. The last

such absence and apprehension are the subject of the present desertion charge. The accused presented evidence of family difficulties and the physical condition of a brother who had been seriously injured. He denied an intention to desert the Naval Service and explained that his absences were made necessary by the exigencies of his family situation. In particular he claimed he wanted to be near his injured brother and to accomplish the rehabilitation of his father. A detailed examination of the evidence is unnecessary for the disposition of this case. It is also unnecessary to discuss the facts relating to the charge of disobedience of a lawful order.

Among his instructions to the court-martial, the law officer included the following remarks:

"If the condition of absence without proper authority is *much prolonged* and there is no satisfactory explanation of it, the court will be justified in inferring *from that fact alone* an intent to remain absent permanently.

"If the court finds that an absence of approximately 17 days has been proved, it is for the court to determine *if such period of absence is a much prolonged one* under all the facts and circumstances in this case,

**159**

and it is for the court to determine from the evidence whether the absence has been satisfactorily explained.

"To warrant a conviction, *evidence of a much prolonged absence or of other circumstances* must be introduced from which the intent to desert can be inferred." [Emphasis supplied.]

These instructions are based substantially on paragraph 164a, Manual for Courts-Martial, United States, 1951, where, in the general discussion of the substantive offense of desertion, the Manual states:

"If the condition of absence without proper authority is much prolonged and there is no satisfactory explanation of it, the court will be justified in inferring from that alone an intent to remain absent permanently."

Insofar as this portion of the Manual sets forth an erroneous principle of law—as distinguished from a rule of evidence—this Court is not bound thereby. Where the Manual conflicts with the Code or the law, as interpreted by this Court, it must give way. United States v Rushlow, 2 USCMA 641, 10 CMR 139; United States v Johnson, 7 USMCA 488, 22 CMR 278.

These instructions were given despite the fact that the accused was tried on the theory that he intended to desert the service and despite the fact that Government counsel, in final argument, conceded the period alleged here was not a "prolonged" absence. It is, however, these instructions that give rise to the issue now before us.

The first paragraph of the instructions set forth above states that if the absence alleged is characterized as much prolonged, and is not explained to the court-martial's satisfaction, they might infer from that "fact" *alone* that the accused intended to desert. Thus, on the basis of this first paragraph, the court-martial could believe that if they found that the absence was much prolonged they would

not have to consider the intent of the accused. This, of course, is contrary to the doctrine set forth in the case of Morissette v United States, 342 US 246, 72 S Ct 240, 96 L ed 288, and is error. See also United States v Miller, 8 USCMA 33, 23 CMR 257. The court-martial must consider the specific intent of the accused and not some substituted "established fact" of a justifiable inference. Seventeen days is merely one fact from which, *when considered with all the other evidence in the case,* an intent to desert may be inferred.

It is clear that justifiable inferences are a proper subject in the instruction of the court-martial. United States v Ball, 8 USCMA 25, 23 CMR 249; United States v Miller, supra. In those cases we stated that the important question is not what nomenclature is used in describing justifiable inferences, but what effect these inferences are to be allowed in the court-martial's determinations. Happily, in the instant case we are free of the problem of nomenclature as the law officer here used only the direct terminology. He spoke in terms of justifiable inferences but not in the ambiguous terminology of presumptions. Unhappily, we are, however, still faced with the problem of the *effect* that this justifiable inference had on the court-martial.

In the Morissette case, supra, the Supreme Court stated that conclusive presumptions may not eliminate the factual question of intent as an ingredient of an offense. This is clear and undisputed. It is also clear that this is not involved in the instructions given in this case. The Supreme Court, however, went on in the Morissette case to say that:

". . . A presumption which would permit but not require the jury to assume intent from *an isolated fact* would prejudge a conclusion which the jury should reach of its own volition. A presumption which would permit the jury to make an assumption which all the evidence considered together does not logically establish would give to a proven fact

160

an artificial and fictional effect." [Emphasis supplied.]

The type of presumption discussed in this section of the Morissette case is what we call a justifiable inference. This is the type of presumption we are concerned with in the instant case, and, as we said above, the instant instruction prejudges a conclusion the court-martial should reach of its own volition. This type of presumption has only the strength of its probative value and as we have detailed in United States v Ball, and United States v Miller, both supra, if the nomenclature is ambiguous, instructions must render unambiguous the effect that the court-martial may give to it.

One necessary ingredient of the offense of desertion as charged in the instant case is that the accused intended to remain away permanently from his place of service. Article 85(a) (1), Uniform Code of Military Justice, 10 USC § 885. The court-martial must consider the necessary ingredient of intent and if the instructions as given would have allowed them to convict the accused of desertion without their considering his specific intent, such instructions were in error and he was prejudiced. This is exactly what occurred in this case. The "established fact" in this justifiable inference is a period of absence. The fact that a court-martial is admonished to consider all the facts and circumstances in arriving at an adjectival characterization of a period of absence is of no consequence. Neither the law officer nor the Manual for Courts-Martial, supra, may substitute a period of absence for the necessary ingredient of intent—regardless of the character of such a period. An absence of seventeen days, or seventeen months, or seventeen years, is only an absence—though its probative value may be great—and it is not a substitute for intent. The court-martial must consider the intent of the accused. See, for a general discussion on other aspects of this problem, H. H. Brandenburg, Proof of Intent to Desert 17 The Federal Bar Journal, April–June, 1957.

The third paragraph of the above-quoted instructions, rather than help-ing to explain the effect of this inference, explains in the disjunctive that evidence of a much prolonged absence is sufficient alone to permit an inference of intent. This compounds the error.

The accused pleaded not guilty to desertion and the central issue in this case was the intent of the accused. Though the question of a "much prolonged absence" was not an issue, the court-martial could have considered it and thereby have eliminated from their consideration the accused's intent. The decision of the board of review is therefore reversed. The findings of guilty of Charge I are set aside, and the record is returned to The Judge Advocate General of the Navy for reference to a board of review. The board in its discretion may approve the lesser offense of absence without leave and reassess the entire sentence, or it may order a rehearing on the desertion charge.

Chief Judge QUINN concurs.

LATIMER, Judge (concurring in the result):

I concur in the result.

I am becoming convinced that Morissette v United States, 342 US 246, 72 S Ct 240, 96 L ed 288, is a legal phenomenon in military law, for it is being cited in support of so many legal principles that it must blanket the entire criminal field. I just fail to see its applicability to the issues of this case, for the issue there involved a charge of larceny and a defense of mistake of fact. The Supreme Court held that the trial judge in his instructions could not take away from the jury its duty to find on the elements of a larcenous intent. No such problem presents itself in the case at bar as this court-martial was not directed to make any finding. But more to the point, if that case holds that intent cannot be inferred from one established fact then I respectfully disagree.

Aside from the foregoing comment, the principal difficulty I find in this decision is that it strikes down absolutely and without necessity or justification a rule which is founded on good

sense and logic and has long enjoyed approval in military forums. I refer to the principle set forth in paragraph 164, Manual for Courts-Martial, United States, 1951, page 313, that:

> "If the condition of absence without proper authority is much prolonged and there is no satisfactory explanation of it, the court will be justified in inferring from that alone an intent to remain absent permanently."

If the principle quoted above announces an erroneous principle of law, then this Court has upon many previous occasions subscribed to a faulty rule. In United States v McCrary, 1 USCMA 1, 13, 1 CMR 1, the Chief Judge, in his dissenting opinion agreed that:

> ". . . It has been the longstanding rule of all the services that a much prolonged unauthorized absence alone will, without satisfactory explanation, justify a trial court in drawing the inference of intent to remain away permanently."

Likewise, Judge Brosman, in writing for a unanimous Court in United States v Cirelli, 1 USCMA 568, 571, 4 CMR 160, said:

> ". . . It is also too well settled to require citation of authority that if the period of unauthorized absence is much prolonged and there is no satisfactory explanation of it, then the court-martial may be justified in inferring from that alone an intention to remain away permanently."

Indeed, even appellate defense counsel acknowledge in their brief that this Court has placed its stamp of approval on this rule and there is no mysticism connected with its application. As I understand an inference it is a process of reasoning by which one fact sought to be established—in this instance, intent to remain away permanently—may be deduced as a logical consequence of another fact—here an unexplained prolonged absence. I believe it fair to say that that inference is neither illogical nor without substantial support in prolonged absence cases, for, unlike my associates, I am sure that when a member of the armed forces leaves without authority and remains away without explanation for an extended period—such as 17 months or 17 years, as suggested by my associates in their opinion—most well-thinking persons would deduce reasonably that the status had become permanent and that the absentee would not return until compelled to do so. I, therefore, cannot join with my colleagues in their sweeping condemnation of this long-recognized principle.

Perhaps without unduly lengthening this opinion, a short explanation of my position may be stated. I call attention to the fact that intent normally can be ascertained only through circumstantial evidence. As we noted in United States v Ferretti, 1 USCMA 323, 3 CMR 57:

> ". . . It is a familiar observation that intent, being a state of mind, is rarely the subject of direct proof, but ordinarily must be inferred from circumstances."

Thus, the Manual does no more than simply announce that a much prolonged absence which is not satisfactorily explained is a circumstance from which the court members may infer justifiably the intent to desert. If that deduction does not follow logically then I misunderstand human behavior. Of course, if there are other facts or circumstances which tend to support or undermine the inference, they, too, should be considered by the members of the court in ascertaining intent. That, however, does not mean that the triers of fact cannot infer an intent to desert from what is, in fact, an unexplained prolonged absence when there are no other circumstances casting light on the accused's state of mind. Certainly one fact or a set of facts may support an inference of intent and therefore the statement found in the Court's opinion, to wit: "The court-martial must consider the specific intent of the accused and not some substituted 'established fact' of a justifiable inference," confuses me, but that is of little moment, for I am certain that the court-martial members understood they had to find a criminal intent from the facts admitted or proved.

Regardless of my disagreement with some of the principles which are announced, even though they are not necessary to this decision, I agree with my associates in their disposition of this case. Here there was evidence relevant to the intent entertained by the accused in addition to his unauthorized absence of only seventeen days. On the one hand, the instructions given by the law officer are susceptible of the interpretation that the members of the court must consider all the facts and circumstances of the case in arriving at their conclusion regarding accused's intent, and with that I am unable to find fault. On the other hand, they are so framed that the court could have construed them to permit conviction of the accused for desertion solely on the theory that his seventeen-day unauthorized absence would support a finding of intent to remain away permanently. Standing alone that is too short a period to logically deduce an intent not to return and therefore the instruction could have been misleading. It has been the law of this Court that we will not speculate as to which of the possible interpretations the court members placed upon mutually inconsistent instructions, and I follow that concept. United States v Noe, 7 USCMA 408, 22 CMR 198; United States v Rowan, 4 USCMA 430, 16 CMR 4. Accordingly, I agree that the conviction of desertion should be reversed, and I join in returning the record to The Judge Advocate General of the Navy for reference to a board of review under the conditions stated.