UNITED STATES, Appellee

v

PATSY SOCCIO, Jr., Private E–2, U. S. Army, Appellant

8 USCMA 477, 24 CMR 287

No. 10,126

Decided December 13, 1957

*First Lieutenant Edwin E. Allen* argued the cause for Appellant, Accused. With him on the brief was *Major Edward Fenig.*

*First Lieutenant Jay D. Fischer* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Thomas J. Newton, Lieutenant Colonel John G. Lee,* and *Major Thomas J. Nichols.*

## Opinion of the Court

HOMER FERGUSON, Judge:

We granted review in this case to consider the correctness of the law officer's instructions. The accused was convicted of desertion, in violation of Article 85, Uniform Code of Military Justice, 10 USC § 885, for an absence of some four and one-half years' duration, terminated by apprehension. He had entered a plea of guilty to the lesser offense of absence without leave, in violation of Article 86 of the Code, supra,

478

10 USC § 886, but not guilty to the greater offense of desertion. The only issue before the court-martial concerned the question of the accused's intent.

Testifying in his own behalf, he related in detail the reasons underlying his unauthorized absence during the period alleged. After having spent several weeks at home on leave he found that he lacked sufficient funds to return to his organization. He obtained civilian employment in order to earn funds to return. It became necessary, however, to give the money earned to his father who was unemployed at the time. While at home he met a young lady whom he married after a brief engagement. He informed her of his status as an absentee from the Army and of his intent to return to the service. She became pregnant shortly after their marriage and because of her weak physical condition, he decided to remain at home in order to take care of her. Her pregnancy ended in a miscarriage. He made preparations to return to the service only to be told by his wife that she was again pregnant. This second pregnancy also unfortunately ended in a miscarriage. After this the accused "wanted to come back real bad" but lacked the means of adequately caring for his wife. She subsequently became pregnant a third time and a child was born shortly before he was apprehended. He further testified that he again decided to return but delayed his departure because the child was too young and his wife too ill at the time. He then decided to wait until a few bills were paid before he returned. During his absence he had lived in the same city where he had resided prior to his entry into the service. He steadfastly maintained that he intended to return throughout his absence. The accused's wife corroborated his testimony that during their marriage he had frequently expressed an intent to return to the service and that on several occasions he had started to turn himself in only to be dissuaded by her pleas begging him to remain.

After opposing counsel had presented closing argument, the law officer outlined to the court the elements of the offense. He then instructed as follows:

"You are advised that the statement 'and a purpose to return provided a particular but uncertain event happens in the future may be considered an intent to remain away permanently' contained in paragraph 164a(1), to be found at page 311 of the Manual, is an incorrect statement of the law. With regard to a contingent intent to return, you are advised that a purpose to return provided a particular but uncertain event happens in the future may not, standing alone, be considered proof of an intent to remain away permanently. Such evidence should be considered by you along with other relevant evidence, if any, of intent in the record in determining whether or not an intent to remain away permanently exists."

Several instructional errors are assigned as grounds for reversal. The first contention made is that the law officer erred in advising the court that concerning the issue of intent, it could consider—"along with other relevant evidence"—that a purpose to return provided a particular but uncertain event happens in the future is proof of an intent to remain away permanently. In discussing the offense of desertion, paragraph 164a(1), Manual for Courts-Martial, United States, 1951, contains the statement that:

". . . a purpose to return, provided a particular but uncertain event happens in the future, may be considered an intent to remain away permanently."

We have had occasion in the past to fully consider the correctness of this Manual provision. In United States v Rushlow, 2 USCMA 641, 10 CMR 139, the accused—as in the instant case—was found guilty of desertion terminated by apprehension. At trial he had testified that upon arriving home he found his mother in need of an operation and because of his parents' financial difficulties, he decided to obtain employment in order to help defray expenses. He further contended that he

did not intend to desert the service but instead intended to return when his brother was discharged from the service. The law officer in instructing the court, read the Manual passage set forth above. We held the instruction erroneous and, in the course of our opinion, said:

". . . The instruction thus told the court members that if they believed the accused had a purpose to return, but that this purpose was conditioned upon his brother's relief from active duty, and contributions to the support of the family, it might find the accused intended to remain away permanently. The instruction did not require that that factor be considered with other relevant evidence of intent in the record as it stated that his intent not to return could be gathered from that fact alone. *To inform a court it could so find seems to be converting a probable intent to return to the service into an intent not to do so. The practical effect of such an instruction was to render the accused's explanation no more than a judicial confession and its legal effect was to announce a new rule of law, that is, specific intent to remain away may be established by proving an intent to return if the latter is based on a contingency.* Accused's only defense was predicated upon a qualified intent to return to the service but the members of the court-martial were instructed that this mental condition could be considered as equivalent to one which purposed an intent to remain away forever. While an intent to return based on a contingency might be rejected as a defense to a crime otherwise established, it is difficult to support a statement to the effect that it establishes an essential element to remain away permanently when it has a tendency to prove the opposite." [Emphasis supplied.]

The law officer in the instant case was obviously familiar with our Rushlow holding for he had earlier informed the court that the passage "contained in paragraph 164a(1), to be found at page 311 of the Manual, is an incorrect statement of the law." He was in error, however, when he advised the court that although it could not consider a contingent intent to return "standing alone" as proof of an intent to remain away permanently, it could consider such evidence "along with other relevant evidence." Evidence of an intent to return provided a particular but uncertain event happens in the future is not in any manner indicative of an intent to remain away permanently, but, on the contrary, is evidence of a probable intent to return. It is within the exclusive province of the court-martial to believe or reject such evidence in reaching its findings unfettered by any instruction which seeks to convert a probable intent to return into an intent to desert. The entire thrust of the accused's defense other than his own statements that he never intended to desert the service, was based on a contingent intent to return when his wife was able to care for herself and their baby. In such a setting, the erroneous instruction was prejudicial to the accused.

Although our holding as to the first issue is sufficient by and in itself to warrant reversal, we deem it advisable to consider the additional instructional errors assigned since similar issues have been raised in several cases presently pending before us. Immediately following the instruction previously discussed, the law officer further advised the court-martial that:

"As to length of absence without authority, it is within the province of the court to determine whether or not the length of time involved, if in the absence of satisfactory explanation, is of such duration from which it can infer an intent to remain away permanently. You must determine whether or not the absence was much prolonged, and if so, whether or not there was a satisfactory explanation for it."

We are met at the outset by the Government's contention that although our recent decision in United States v Cothern, 8 USCMA 158, 23 CMR 382, "lends support" to appellant's claim of error, we should nevertheless reconsider

our holding in that case and limit its application "to those situations in which a court-martial could not reasonably find that the period of absence was of such duration as to justify an inference that accused possessed the requisite intent." This we are not inclined to do. Although the instruction considered in Cothern, supra, was not precisely the same as the one found here, it nevertheless strikes too close to the evil there denounced to permit of fine distinctions and differentiations. In Cothern, supra, the law officer had instructed the court that if the condition of absence without proper authority was much prolonged, it would be justified "in inferring *from that fact alone* an intent to remain absent permanently." In holding such instruction erroneous, we said:

"The first paragraph of the instructions set forth above states that if the absence alleged is characterized as much prolonged, and is not explained to the court-martial's satisfaction, they might infer from that 'fact' *alone* that the accused intended to desert. Thus, on the basis of this first paragraph, the court-martial could believe that if they found that the absence was much prolonged they would not have to consider the intent of the accused. This, of course, is contrary to the doctrine set forth in the case of Morissette v United States, 342 US 246, 72 S Ct 240, 96 L ed 288, and is error. See also United States v Miller, 8 USCMA 33, 23 CMR 257. The court-martial must consider the specific intent of the accused and not some substituted 'established fact' of a justifiable inference. Seventeen days is merely one fact from which, *when considered with all the other evidence in the case,* an intent to desert may be inferred."

Although the law officer in the case at bar did not inform the court that if it found the condition of absence much prolonged, it would be justified in inferring "from that 'fact' *alone*" an intent to desert, he nevertheless failed to advise adequately that the period of absence—regardless of its duration—is but a single fact from which *"when considered with all the other evidence in the case,* an intent to desert may be inferred." In Cothern, supra, the error was one of commission; here, it is one of omission.

One further matter merits attention. Twice the law officer in the brief instruction here under consideration informed the court that an intent to remain away permanently might be inferred from the length of absence "in the absence of satisfactory explanation." We believe this had the effect of compounding the other errors found in the instructions. As the length of absence was undisputed, the accused was thus required to convince the court of his innocence by a "satisfactory" explanation of his absence. Such an instruction has the effect of shifting the burden of proof to an accused in order to establish his innocence rather than placing the burden on the Government throughout the trial to prove the accused's guilt beyond a reasonable doubt. Article 51(c) of the Uniform Code of Military Justice.

A case closely in point is Duncan v United States, 23 F2d 3 (CA7th Cir) (1927), where an accused was charged *inter alia* with forging and passing a Government check. He had defended on the ground that he had received the check in part payment of the purchase price of certain real estate that he had sold and that upon receiving the check he had presented it to the bank for payment, believing the signatures were the genuine signatures of the payee. The trial judge, in his charge to the jury, instructed that if it believed that the check had been stolen and that it was found in the possession of the accused, it became the latter's duty *"to explain to you, to your satisfaction,* how he obtained possession of that check." The Court of Appeals for the Seventh Circuit, in reversing the accused's conviction because of the erroneous instruction said in pertinent part:

". . . In a criminal case, the burden of proof never shifts. The government is required to establish its case beyond a reasonable doubt.

481

When the evidence is sufficient to convince the jury beyond a reasonable doubt that property recently stolen is found in the possession of the accused, such accused person naturally carries the duty of explaining its possession. This, however, does not mean that in a criminal case the burden of proof shifts.

"In explaining the possession of such recently stolen property, the accused is only required to offer such a rational explanation as will raise in the minds of the jury a reasonable doubt as to his innocence. To require him to explain to the *satisfaction of the jury* is to impose upon him a burden greater than the law requires. At least, it seems to us that such language, without further explanation, was sufficient to leave with the jury the impression that the burden had shifted to the accused to *satisfy* the jury of his innocence. For innocence or guilt, upon the disclosed facts, depended upon the explanation the accused offered respecting this possession of the check."

In United States v Crawford, 6 USCMA 517, 20 CMR 233, the accused was convicted of wrongful use of narcotics. He had testified at trial that a friend had given him a bottle of medicine represented to be paregoric to relieve discomfort. Evidence was introduced to show that paregoric contains morphine and that if ingested in a sufficient amount, it will give a positive morphine reaction in a test of a urine sample. At trial counsel's request, the law officer instructed the court that although the use of narcotics when consumed by accident or mistake is innocent, the Government is not required to negative the existence of these exceptions and that such evidence must come from evidence produced by the accused. The Court held that such instruction was "undoubtedly" wrong because:

"Standing alone, the controverted instruction may possibly be interpreted to shift the burden to the accused to satisfy the court that he innocently ingested the drug. So interpreted the instruction would be prejudicial. An accused is not required to prove

his innocence. At all times, the ultimate burden of proving wrongdoing is on the Government; and it must establish guilt beyond a reasonable doubt. A permissible presumption or inference may aid the Government in its proof, but it does not in any way alter the prosecution's obligation to establish guilt; nor does it affect the right of the accused to do and say nothing."

The burden is always on the prosecution to establish the guilt of an accused beyond a reasonable doubt. Price v United States, 200 F2d 652 (CA5th Cir) (1953). To misplace that burden, as was done in the instant case by instructing the court that the accused must satisfactorily explain his absence, requires an accused to acquit himself rather than requiring the Government to convict him. Lambert v United States, 101 F2d 960 (CA5th Cir) (1939). We believe a sound rule is the one stated in Dillon v United States, 218 F2d 97 (CA8th Cir) (1955), where the court said:

"Great care should be observed in the exercise of judicial discretion to the end that no shifting of the burden placed upon the prosecution to prove guilt result in requiring to any degree or extent that a defendant prove his innocence. The burden of proof must remain on the prosecution to establish guilt. The administration of justice is not a game of chess or of hide-and-seek. It is a search for truth and the application of the law to the true facts in order that substantial justice be done under the law."

In view of the several errors contained in the law officer's instructions, the accused's conviction of desertion cannot stand. The decision of the board of review is reversed. The record of trial is returned to The Judge Advocate General of the Army for reference to a board of review. The board, in its discretion, may approve the lesser offense of absence without leave and reassess the sentence or it may order a rehearing on the principal charge.

Chief Judge QUINN concurs.

LATIMER, Judge (concurring in the result):

I concur in the result.

In the case at bar, the law officer can be charged with ignoring the words of caution found in United States v Rushlow, 2 USCMA 641, 10 CMR 139. There we explicitly pointed out the inadvisability of using certain language found in paragraph 164a(1) of the Manual. There are two quotations in that opinion which should have put him on notice that the principle of inferring intent to remain away permanently from an intent to return if a particular event occurred was of doubtful validity. There we said:

". . . This particular sentence is inartfully drawn and should not be made the subject matter of the instruction,"

and

". . . Assuming the Manual sentence might be a correct statement of the law under some conditions, a view we do not advocate, they are not present here."

Furthermore, he should have been alerted to the possibility of erroneously instructing the court, for in that opinion we went on to say that the Government conceded the statement did not accurately state the law.

In view of the foregoing, I wonder why the law officer courted the possibility of error. Particularly is my curiosity aroused when I find no such issue is raised reasonably by the evidence. The accused was absent for nearly five years. During that period, his contingencies for return, if any, were as varied as his imagination would permit, for he rambled through a series of incidents which were offered as excuses for not returning, but none was suggested as a contingent event which, if it happened, would cause him to rejoin the service. In chronological order, the events which caused him to remain absent were these: He lost his return ticket, he lacked money to pay his transportation to his home station, he was required to give financial assistance to his father, he got married, his wife became pregnant, she suffered two miscarriages, a child was born, his wife became ill and cried when he suggested a return, and he had to pay a few bills. If from that testimony there could be found a purpose to return if an uncertain event happened in the future, I am unable to select the event. Therefore, I feel reasonably certain the court-martial would encounter difficulty in doing so, and the members would be confused as to how the instruction should be applied. Accordingly, I conclude the instruction was confusing, inappropriate, and incorrect, and suggested a theory of prosecution which was not supported by the evidence. Certainly, in this setting, the instruction was erroneous and prejudicial and, as a matter of advice to law officers, instructional guidance would be improved if this theory was eliminated from all future charges regardless of the issues. For the foregoing reasons, I concur in the first portion of the Court's opinion.

From this point on, I part company with my associates. I thought the principles announced in United States v Cothern, 8 USCMA 158, 23 CMR 382, were erroneous, but this case goes further and holds that a law officer errs if he instructs on a much prolonged and unexplained absence and fails to inform the court-martial that it can only be considered with all other evidence in the case before an intent to remain away permanently may be inferred. Even if that were a correct principle of law, it was not breached in the instant case. Under numerous previous decisions of this Court, we have stated the rule to be that the instructions must be considered in their entirety. If that is done, it is quite clear that, within the fair intendment of this charge to the court, the law officer told the court-martial that all relevant evidence should be considered in determining accused's intent.

The important point discussed and erroneously decided by the Court is unnecessary to this decision. Unfortunately the discussion confuses the right of a court-martial to draw a reasonable inference from proven facts

**483**

with the burden of proof. In connection with his charge to the court, the law officer had this to say on the questioned inference:

"As to length of absence without authority, it is within the province of the court to determine whether or not the length of time involved, if in the absence of satisfactory explanation, is of such duration from which it can infer an intent to remain away permanently. You must determine whether or not the absence was much prolonged, and if so, whether or not there was a satisfactory explanation for it."

As applied to the facts in this record, it should be noted that this instruction permits the court-martial to infer an intent to remain away permanently from a four and one-half-year absence, provided the testimony in the record did not satisfactorily explain the reasons therefor. My associates find from this a shifting of the burden of proof to the accused, but I contend they interpret the instruction incorrectly and misapply the law.

I understand an inference to be a process of reasoning by which a fact or proposition sought to be established is deduced as a logical consequence from other facts already established. Measuring the specific facts of this case by that rule, I reach the following conclusion. It was judicially admitted by the accused that he was absent without authority for four and one-half years. From that period of absence, I believe it permissible for any reasonable person to draw an inference that he intended to remain away permanently. Of course, the strength of that inference would be lessened if facts were placed before the court which indicated there was some reason, excuse, or justification for the long delay in his return to military control. Certainly, if a serviceman was absent from his unit for four years, reasonable minds might conclude he did not intend to return, but if the evidence established that during that full period of time he was a prisoner of war in the hands of the enemy, such an explanation would preclude the drawing of an inference of intent to remain away permanently. Therefore, to prevent a court-martial from inferring an intent on an incorrect formula, there must be included in the instruction the reservation that the absence must be unexplained.

Approached somewhat differently, the instruction did no more than this. It required the Government to prove an unauthorized absence, together with the dates of the inception and termination as a base for an inference of intent. This burden the Government carried and had the taking of evidence ended there, some of the triers of fact might have reasonably inferred from the four and one-half-year absence that the accused intended to remain away permanently. Other members of a court-martial might possibly not have been inclined to make that deduction, but it should go without saying that all would be less inclined to so deduce if any evidence was placed in the record which advanced an explanation or reason for such a long period of absence. The accused was at perfect liberty to take his chances on the mental processes of the court members and not seek to offer any explanation. He could have relied on the weakness of the evidence produced by the Government, but after pleading guilty to the unauthorized absence he concluded to explain his failure to return. By that process of admission and avoidance, he sought to influence the court-martial against inferring an intent not to return. Having made his explanation, the members of the court were at liberty to disbelieve his testimony or accept it at face value. It is at this point in their reasoning that the word satisfactory as used in the instruction takes on meaning. Surely court members are not bound to accept an explanation that they conclude is untruthful. Neither are they precluded from drawing a proper inference if an unsatisfactory explanation is offered, for, if they are, any rambling tale would bar a finding of the necessary intent. It is only when an explanation satisfactory to them can be found from all the evidence that a doubt concerning the intent of the accused will be engendered in their minds. Whether or not any doubt is raised about his

intent has nothing to do with the ultimate burden of proof because the court is instructed that the Government must prove its case beyond a reasonable doubt. It is just faulty reasoning to rationalize that the burden of proof is shifted to the accused. All that occurs is that a doubt growing out of any explanation offered by him must be weighed by the court-martial against the prosecution evidence before it can find the accused is guilty beyond a reasonable doubt.

Going one step further and assuming, arguendo, that the instruction placed some burden on the accused, the additional load I find is no more than that he repel with excuse or explanation that which has been proved. I can call on respectable authority to support the proposition that that burden may be placed on him, even though my associates cite several cases which they contend hold otherwise. However, a reference to them will show they are not apposite in the case at bar.

In United States v Crawford, 6 USCMA 517, 20 CMR 233, the instruction went further than the one given in the instant case, for there the law officer stated that "such explanation [of the use of narcotics] must come from evidence produced by the accused." It was for this reason that we disapproved of the instruction, as we said at page 520:

> "Undoubtedly, the instruction as given in this case is wrong. Evidence of 'accident or mistake' need not be produced by the accused. On the contrary, an issue can be reasonably raised by evidence presented by the prosecution itself."

But even in Crawford we affirmed the conviction, significantly stating:

> ". . . A permissible presumption or inference may aid the Government in its proof, but it does not in any way alter the prosecution's obligation to establish guilt; nor does it affect the right of the accused to do and say nothing. Parts of an instruction, however, cannot be read *in vacuo*. They must be read together as a whole.

> ". . . Reading both parts of the instruction together, there is no fair risk that the court members misunderstood the burden of proof. The controverted part of the instruction appears as an abstract statement of law. It is given specificity of meaning by the advice that 'the defense has introduced evidence to show that . . . [the accused] was ignorant of the fact that he was using such a drug.' With its attention directed to this evidence, what standard was the court to use in determining the accused's guilt or innocence? The only standard delineated by the law officer was that the Government had to establish guilt beyond a reasonable doubt."

In the instant case, the court-martial was instructed that they must find the accused guilty beyond reasonable doubt; thus, for the same reasons enunciated in Crawford, the standard of determining the accused's guilt could not have been misinterpreted by the court members.

The case of Duncan v United States, 23 F2d 3 (CA7th Cir) (1927), is cited by the majority as to the meaning of a "satisfactory explanation." A reference to that case will show that in a colloquy between the judge and defense counsel, the jury could have interpreted the judge's remarks to mean that the burden of proof shifted to the defendant. It is interesting to note that the following quotation from that case establishes the principle which I contend for, namely, not that the burden of proof shifts but that the defendant carries the duty of explaining his act or acts if he desires to avoid an unfavorable inference being drawn therefrom:

> ". . . In a criminal case, the burden of proof never shifts. The government is required to establish its case beyond a reasonable doubt. When the evidence is sufficient to convince the jury beyond a reasonable doubt that property recently stolen is found in the possession of the accused, such accused person naturally carries the duty of explaining its possession. This, however, does not

mean that in a criminal case the burden of proof shifts.

"In explaining the possession of such recently stolen property, the accused is only required to offer such a rational explanation as will raise in the minds of the jury a reasonable doubt as to his innocence. To require him to explain to the *satisfaction of the jury* is to impose upon him a burden greater than the law requires. At least, it seems to us that such language, without further explanation, was sufficient to leave with the jury the impression that the burden had shifted to the accused to *satisfy* the jury of his innocence."

To place this case in its proper perspective, it must be remembered that any evidence concerning an explanation for the absence was peculiarly within the knowledge of the accused. It is in situations where that condition exists that an accused is not subject to oppression if he is required to explain his misbehavior or suffer the consequences of the court-martial using the facts proven to support an inference of his intent adverse to his plea. The heart of that problem is laid bare by the Supreme Court of the United States in at least three well-considered cases, and we have previously followed that Court in this area.

Mr. Justice Cardozo, in Morrison v California, 291 US 82, 88–89, 78 L ed 664, 669, 54 S Ct 281 (1934), wrote:

". . . The decisions are manifold that within limits of reason and fairness the burden of proof may be lifted from the state in criminal prosecutions and cast on a defendant. The limits are in substance these, that the state shall have proved enough to make it just for the defendant to be required to repel what has been proved with excuse or explanation, or at least that upon a balancing of convenience or of the opportunities for knowledge the shifting of the burden will be found to be an aid to the accuser without subjecting the accused to hardship or oppression."

It is of more than passing interest for me to note that this precise quota-tion was quoted in and relied on by all three Judges of the Court in United States v Gohagen, 2 USCMA 175, 7 CMR 51. Furthermore, the rationale announced therein was approved by Chief Justice Vinson, in United States v Fleischman, 339 US 349, 363, 94 L ed 906, 914–15, 70 S Ct 739 (1950), who went on to say:

". . . the burden of the affirmative was not an oppressive one for respondent to undertake; the relevant facts are peculiarly within her knowledge. She was called upon merely to introduce evidence as to what steps she took after receiving the subpoena, or, if she took no action, any evidence tending to excuse her omission. Respondent does not lose the presumption of innocence that surrounds the defendant in a criminal prosecution. That presumption continues to operate until overcome by proof of guilt beyond a reasonable doubt and is not to be confused with burden of proof, which is a rule affecting merely the time and manner of proof."

In a third case, Yee Hem v United States, 268 US 178, 45 S Ct 470, 69 L ed 904 (1925), the Supreme Court had under consideration a statute which provided that opium found within the United States was presumed to have been imported after a given date, and that the defendant was to bear the burden of proof to rebut the presumption. The court disposed of the appellant's argument attacking the statute by stating:

"The point that the practical effect of the statute creating the presumption is to compel the accused person to be a witness against himself may be put aside with slight discussion. The statute compels nothing. It does no more than to make possession of the prohibited article prima facie evidence of guilt. It leaves the accused entirely free to testify or not, as he chooses. If the accused happens to be the only repository of the facts necessary to negative the presumption arising from his possession, that is a misfortune which the statute under review does not create, but which is inherent in the case. The same

486

situation might present itself if there were no statutory presumption, and a prima facie case of concealment with knowledge of unlawful importation were made by the evidence. The necessity of an explanation by the accused would be quite as compelling in that case as in this; but the constraint upon him to give testimony would arise there, as it arises here, simply from the force of circumstances, and not from any form of compulsion forbidden by the Constitution."

In our first decided case, United States v McCrary, 1 USCMA 1, 1 CMR 1, a majority of the Court made this observation:

"We do not quarrel with the rule of law that the government must prove beyond a reasonable doubt all essential elements of the crime and that the defendant need not prove his innocence. However, there are reasonable inferences which members of a court-martial may draw from those facts which are established beyond a reasonable doubt and if the accused is to escape the consequences of those inferences there must be some evidence in the record which makes the inference unreasonable or irrational. To escape an inference arising from possession of recently stolen property an accused might be required to explain his possession; and to escape an inference of intent to abandon the service from much prolonged absence from an overseas replacement squad-ron he might be required to explain his failure to be present. This rule does not require the accused to testify in his own behalf. It merely affords him the choice of explaining what might be incriminating circumstances or allowing the court-martial to make reasonable inferences from his unexplained and out of the ordinary conduct."

Again in United States v Doyle, 3 USCMA 585, 605, 14 CMR 3, Judge Brosman, agreeing with my analysis of this proposition, said:

"Concerning the proof of the required willfulness, I am convinced that 18 USC § 643, like its predecessor, 12 Stat 593 (1862), supra, placed on the accused a burden of producing 'satisfactory evidence' of innocent intent—once the prosecution has established failure to render any account, or the rendition of an account which in some significant respect is untrue. Actually this evidence, to be 'satisfactory' from the accused's standpoint, need only generate a reasonable doubt in the minds of the members of the court-martial. Yet, of course, they are permitted to disbelieve that evidence entirely and conclude that the accused was willful in his conduct."

Having stated my reasons, it becomes obvious that I concur in the disposition ordered by the Court solely because of the erroneous instruction first mentioned in this opinion.