UNITED STATES, Appellee

v

THOMAS H. ELLIOTT, JR., Private E–2, U. S. Army, Appellant

8 USCMA 548, 25 CMR 52

*Colonel Edward M. O'Connell* was on the brief for Appellant, Accused.
*Lieutenant Colonel John G. Lee, Major Thomas J. Nichols* and *First Lieutenant Jay D. Fischer* were on the brief for Appellee, United States.

## Opinion of the Court

HOMER FERGUSON, Judge:

This case exemplifies the abuses this Court sought so assiduously to curtail in United States v Rinehart, 8 USCMA 402, 24 CMR 212. One of the several reasons offered in that case why court members must be denied access during trial to the Manual for Courts-Martial, United States, 1951, was that "many of the passages contained therein have been either expressly or impliedly invalidated by decisions of this Court," and the members being untrained in the law have no way of distinguishing the valid from the invalid, the material from the immaterial, and the relevant from the irrelevant. What we said there has now come to pass.

The issue which gave rise to this appeal may best be presented in the language of the record itself. We shall interpolate only to the extent necessary to put what is quoted in context. The accused's unauthorized absence of some three and one-half months, terminated by apprehension, resulted in his being charged with desertion. The prosecution presented its case in routine fashion, at the conclusion of which the defense elected not to present evidence, and rested. In closing argument the trial counsel said:

"The court will take judicial notice of the portion of the Manual for Courts-Martial setting forth certain criteria which may be considered as evidence of an intent to remain away from a unit permanently, and the court will recall, I am sure, that portion of the Manual appearing on page 313 wherein it is stated that if the condition of absence without proper authority is much prolonged, and I point out to the court that the evidence in this case indicates that the the absence is much prolonged for it is approximately three and one-half months ——."

At this point defense counsel objected to trial counsel's "alluding to the Manual or quoting the law in any way." In sustaining the objection, the law officer instructed the court to disregard trial counsel's reference to the Manual and further admonished the members that they "will be bound only by the law given by the law officer." At the conclusion of arguments, the law officer correctly advised the court-martial of the applicable law governing the case.

When the law officer concluded his instructions, trial counsel requested that the court be instructed "on the matter appearing in the Manual for Courts-Martial, 1951, near the bottom of page 313."[1] Defense counsel objected to such instruction, contending that the law officer had already given "full and complete instructions." Trial counsel, however, insisted "that the court must be given some guidance on the evidence they may consider in ar-

---

[1] "If the condition of absence without proper authority is much prolonged and there is no satisfactory explanation of it, the court will be justified in inferring from that alone an intent to remain absent permanently." (Paragraph 164a, Manual for Courts-Martial, United States, 1951). In United States v Cothern, 8 USCMA 158, 23 CMR 382, we held that this quoted portion of the Manual stated an erroneous principle of law. See also United States v Soccio, 8 USCMA 477, 24 CMR 287.

riving at their conclusion." After conferring privately with the law officer, trial counsel noted for the record that he had "pointed out certain portions of the Manual for Courts-Martial to the law officer that I request instructions thereon." The law officer then referred to "the late decision by the Board of Review in the case of *United States v. Spruill*."[2] He indicated his disagreement with the holding in that case but felt that it precluded his giving the instruction requested by the trial counsel. Trial counsel then asked the law officer "Do you feel that the court must be deprived of guidance?" The law officer again stated that because of the recent decision (United States v Spruill) he did not feel that he could "give the court instructions in the manner I think they should be." However, he found "nothing to prevent the court from reading the Manual for themselves." Trial counsel was now satisfied. The court closed to deliberate, and, upon reopening, announced their findings of guilty.

It was error for the law officer to permit the court members to have access to the Manual and such error was compounded by the law officer's suggestion that they could determine for themselves whether or not the Manual provision urged by the trial counsel was applicable.[3] His reason for permitting such procedure is difficult to understand in view of the fact that he had prior thereto correctly instructed the court on the law applicable. Permitting the court members to rummage through the Manual and determine for themselves the legal principles involved amounted to an implied invitation to ignore the correct instructions that had already been given. We have no way of knowing what law the court relied on or rejected in arriving at its findings.

Another reason found in Rinehart, supra, why the use of the Manual is no longer acceptable practice, was the recognition of the law officer as the trial judge in the military justice scheme of things. We particularly emphasized his role in the instructional area and considered it "'fundamental that the only appropriate source of the law applicable to any case should come from the law officer.'" United States v Chaput, 2 USCMA 127, 7 CMR 3. Here, unfortunately, the law officer, at trial counsel's insistence, abdicated his function. The court-martial thus became not only the triers of fact but the judges of the law as well.

The decision of the board of review is reversed. The accused's plea of guilty to the lesser offense of absence without leave precludes error as to that offense. The record is returned to The Judge Advocate General of the Army for reference to a board of review. The board, in its discretion, may approve such lesser offense and reassess the sentence or it may order a rehearing on the principal charge.

Chief Judge QUINN concurs.

LATIMER, Judge (concurring in the result):

I concur in the result.

While my associates seem quite satisfied that this case stamps United States v Rinehart, 8 USCMA 402, 24 CMR 212, as a worthy contribution to military law, I assert quite to the contrary. All I can say about this appeal is that it fairly well establishes that the Court took an unnecessarily drastic measure when it threw away the Manual because it contained a limited number of statements we have held to be erroneous. Since the book has been an invaluable aid to military courts, my preference, as indicated in my dissent in that case, was to permit its use but to test for prejudice in those cases where it might misinform the court-martial on the law. That is precisely

[2] United States v Spruill [CM 393927] 23 CMR 485.

[3] We are not unmindful of the fact that at the time the accused's trial was held the Rinehart case had not yet been decided. However, even without the benefit of that holding, there can be no

justification for a law officer authorizing a court-martial to determine for itself the pertinent legal principles to be applied. United States v Chaput, 2 USCMA 127, 7 CMR 3; United States v Lowry, 4 USCMA 448, 16 CMR 22.

the method used by the Court in this instance, and that course has been used continuously by us since the passage of the Uniform Code of Military Justice.

Much of the surface strength of the majority opinion in this appeal is dissipated when consideration is given to the fact that the Government conceded prejudicial error had been committed by the law officer. For the information of the reader, the disposition ordered by the Court is that which was proposed by the Government. So that there will be no misunderstanding about the reasons for the concession, I mention the fact that it was not predicated on Rinehart but was based on the rule which should be the reason for this reversal, namely, that the Manual's use in this case prejudiced the accused because the law officer permitted the court-martial members to consider a statement dealing with intent in desertion which, in United States v Cothern, 8 USCMA 158, 23 CMR 382, the Court held to be erroneous. The net result of his instructional charge was that the court-martial was given improper guideposts and many times we have held that to be prejudicially erroneous.

To illustrate that we could have complied with the provision of Article 59 of the Code, 10 USC § 859, and at the same time have protected an accused by deciding each case on an ad hoc basis, I quote the Government's concession which was made prior to United States v Rinehart, supra:

"However, it is obvious that where a tribunal is referred to a portion of the Manual it should not be directed to an inapplicable provision or one stating an incorrect principle. Although at the time of trial herein, United States v Cothern, supra, had not yet been decided, the Government recognizes that as a result of the law officer's statement that the

members of the court were not precluded from reading the Manual provision referred to by trial counsel, there is a strong probability that several or all of the members read what is now considered an erroneous principle of law, i.e., that intent to remain away permanently may be inferred from evidence of a prolonged absence alone. Although the factual distinction is obvious, the Government is unable to provide a distinction sufficient to warrant a different result here from that reached in United States v Cothern, supra, and other recent cases. . . ."

Certainly, if counsel for the parties have a sense of discrimination which permits a proper consideration of each case on its merits, then this Court ought to be able to separate the cases where prejudice appears from those where it is absent.

Just a cursory reading of the majority opinion in this instance shows how easy it is to assess prejudice. In some instances it might be more difficult, but we do it in all other cases where there are instructional errors and the use of the Manual poses only that problem. If it is used in a particular type of case where its provisions concerning the offense are contrary to sound principles of law and the court-martial members are not advised to that effect, then we know they have been misinformed. However, I have yet to understand how an erroneous statement concerning the inference which may be drawn from much prolonged absence in desertion would prejudice an accused being tried for robbery. When I am convinced there is a fair probability that will occur, I will yield to my associates.

Because the record shows prejudice to the accused, I concur in the disposition ordered.