UNITED STATES, Appellee

v

ODIE B. IVORY, Private, U. S. Army, Appellant

9 USCMA 516, 26 CMR 296

No. 10,804

Decided August 1, 1958

*First Lieutenant Judson A. Parsons, Jr.*, argued the cause for Appellant, Accused. With him on the brief were *Major Frank C. Stetson, Captain John F. Christensen,* and *Captain Arnold I. Melnick.*

*First Lieutenant Jay D. Fischer* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel John G. Lee.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

A lack of care in framing the specification here involved has transformed an ordinary desertion case into a complex procedural maze which now confronts us upon appeal. The accused was charged with desertion terminated by apprehension, in violation of Article of War 58, 10 USC (1946 ed) § 1530. The specification alleging the offense stated that he had absented himself from his organization described as the

> ". . . 9225 Technical Service Unit, Transportation Corps, Company H, 5th Regiment *Ordnance,* New York Port of Embarkation, located at Camp Kilmer, New Jersey, . . ." [Emphasis supplied.]

After the taking of testimony had been completed, the court-martial received instructions from the law officer and deliberated upon findings. Returning to open court, the president announced the findings of guilty and proceeded to make the following observation:

> "The court notices that there is an administrative error in the preparation of the specification as pertains to the 5th Regiment Ordnance. The extract copy of the morning report indicates 5th Regiment ORD.
>
> "LAW OFFICER: The difference between the abbreviation—
>
> "PRESIDENT: The abbreviation ORD indicates Overseas Replacement Depot.
>
> "LAW OFFICER: May I see that morning report?
>
> (A document was handed to the law officer)
>
> "PRESIDENT: The same is also indicated in Prosecution's Exhibit 2. The court considers that administrative error and makes mention of it at this time."

Trial counsel considered that remedial action should be taken to correct the inaccuracy and accordingly made a motion to amend the specification to read "5th Regiment Overseas Replacement Depot" rather than "5th Regiment Ordnance." Defense counsel registered an objection, requesting an out-of-court hearing to discuss the merits of the prosecution's motion. During this hearing, a transcription of which has been appended to the record, the law officer expressed his inclination to grant the motion, but defense counsel contended there was a fatal variance and then went on to remark:

> "DEFENSE COUNSEL: My thinking on this, Major Yachelson [trial counsel], is this. Assuming that it is a fatal variance and that the accused could not be legally convicted on this specification, I don't see anything to prevent the government from dismissing this charge or breaking this case and retrying the accused or ordering a rehearing on a different specification."

Defense counsel echoed the same objection in open court after the recess had terminated. Whereupon the law officer deferred his ruling on the motion to amend and suggested that the trial counsel consult the convening authority in reference to the procedure to be followed. Pursuant to this request, the convening authority withdrew the original charges and preferred new ones. His reasons for so doing are stated in a memorandum attached to the record of trial. The importance of the document to the issue at hand compels us to quote a substantial portion of it:

> "2. The accused was found guilty, but not sentenced, of an unauthorized absence from an organization different from that from which he was actually absent. There being no relationship between the two organizations, such as parent-subordinate, and since the accused was neither as-

signed nor attached to the organization alleged in the specification, there is a material variance between the pleading and the proof. An amendment to the specification to have it reflect the proper organization at this stage of the proceedings would be a material, substantive change of matter which is legally essential to the specification and therefore is not authorized (Miller, 3 CMR 710).

"3. Since there is substantial evidence before the court tending to prove that the accused is guilty of an offense not alleged in the specification, it is recommended that the charges be withdrawn from the court and new charges be preferred pursuant to the provisions of Paragraph 55a, MCM, 1951."

Consequently another court-martial was appointed. This time the accused was properly charged with desertion from the "5th Regiment Overseas Replacement Depot," was found guilty and sentenced to dishonorable discharge, total forfeitures, and confinement at hard labor for eighteen months. The convening authority reduced the confinement to six months, and a board of review affirmed the findings and the modified sentence. The latter tribunal denied a motion for reconsideration, and the accused petitioned this Court. We granted review on two issues, the first involving the question of whether the accused was twice tried for the same offense and the second concerning an instructional error by the law officer.

At the accused's second trial, before a plea was entered, the defense moved to dismiss the charge upon the ground of former jeopardy. Defense counsel argued that the improper designation of the accused's unit at the former trial was not a material variance and, therefore, urged that the first proceeding constituted an acquittal of the offense for which the accused was presently being tried. The motion, as we have indicated, was denied.

Our initial reaction to this appeal is to affirm the findings and ▮▮▮▮▮▮ sentence upon the ground of self-induced error. Usually an accused cannot insist upon specific redress and then complain because the Government gave him his desired relief. The law does not look with favor upon such inconsistency. At the time the variance first came to the attention of the trial court, the law officer was disposed to grant the motion of the Government to amend the specification to conform to the proof. He refrained from so doing only because of the objection of defense counsel who suggested, as our quotation from the record indicates, that a dismissal of the specification on the basis of a fatal variance and the convening of a new court to try the accused on a properly pleaded charge would meet the requirements of due process of law. The accused was granted his desired relief, and the same trial defense counsel met the new charge by reversing his theory and contending that the variance was not fatal and prosecution was barred. Apparently trial defense counsel concluded he could play it safe by changing theories, once he had succeeded in obtaining a rehearing. But a trial is a serious proceeding, and when a firm position is taken by an accused which redounds to his benefit, his position ordinarily will be considered as fixed for he must "deal fairly with the court." United States v Wolfe, 8 USCMA 247, 24 CMR 57. Therefore, we could very well refuse to consider the merits of his appeal by estopping him from claiming as a prejudicial irregularity the relief which he himself requested. Cf. State v Beal, 202 NC 266, 162 SE 561 (1932). However, as the question alleged here primarily assails the dignity of the Code itself, in the interests of justice we will consider this action upon the errors assigned.

Although cognizant of the principle of law that a trial terminated by a fatal variance never raises the defense of jeopardy in a second action bottomed upon a proper pleading, United States v Hopf, 1 USCMA 584, 5 CMR 12, we are not disposed to consider the nature of the variance before us in this appeal. Rather, we prefer to go to the nucleus of the matter and determine whether the jeopardy provisions of Article 44 of the Code, 10 USC § 844, bar the second trial.

The constitutional privilege against

**519**

former jeopardy, applicable to the civilian community, is granted to offenders against military law by Article 44, supra. See, Wade v Hunter, 336 US 684, 93 L ed 974, 69 S Ct 834 (1949), rehearing denied 337 US 921, 93 L ed 1730, 69 S Ct 1152. The Article contains three sections: The first, (a), is merely a restatement of the broad constitutional privilege enumerated in the Fifth Amendment, and the others, (b) and (c), provide two rules peculiar to the exigencies of military law. The three, of course, must be considered together. Section (a) provides that, "No person may, without his consent, be tried a second time for the same offense." Granted the mandate of this section is clear, we must yet inquire as to what is considered a trial for the purpose of this defense. In enacting this Article, members of Congress considered two practices peculiar to the Armed Forces which they felt should be explicitly covered by statute. The first arises from military appellate procedure.

It has been axiomatic to our jurisprudence that the jeopardy provisions of the Constitution are ▆▆▆▆▆▆ waived by an accused who is ▆▆▆▆▆▆ enjoying a new trial as a consequence of his own successful appeal from a former proceeding. This waiver would not, of course, be applicable in all appeals in military law since, under our procedure, an accused may be the beneficiary of certain automatic appeals. Articles 66(b) and 67(b), Uniform Code of Military Justice, 10 USC §§ 866 and 867, respectively. Hearings before Senate Committee on Armed Services on S. 857 and H. R. 4080, 81st Congress, 1st Session, pages 321-25 (1949). Rather than eliminate this salutary provision of military law, the legislature chose instead to insure legally valid rehearings by providing that:

"(b) No proceeding in which an accused has been found guilty by a court-martial upon any charge or specification is a trial in the sense of this article until the finding of guilty has become final after review of the case has been fully completed." [Article 44(b), Uniform Code of Military Justice, 10 USC § 844.]

Senate Report No. 486, 81st Congress, 2d Session, pages 19–20 (1949). Cf. United States v Zimmerman, 2 USCMA 12, 6 CMR 12. Applying this particular provision to the case at bar, the first hearing at which the accused was found guilty was not a trial in the sense of Section (b) for the first step after the findings was never completed. Certainly, when trial proceedings are interrupted for good and valid reasons other than the failure of proof, the incompleted action will not support a jeopardy defense. The theory behind this provision is obvious. Pretermitting the safeguards cloaking sentences, which are not presently involved, if an accused is initially found guilty, he can never be convicted of a degree of an offense greater than that returned by the original court-martial. Consequently, an accused who, after being convicted, is subjected to retrial for the same offense of which he was previously found guilty can never be prejudiced. Paragraph 92, Manual for Courts-Martial, United States, 1951. The only change which can be made to his status would be a reduction in the degree of the offense from the findings of the original court-martial.

In United States v Padilla, 1 USCMA 603, 5 CMR 31, the convening authority held the first trial of two accused to be a nullity because of the presence of two officers who were not lawfully appointed to the Court. At this trial, Jacobs was acquitted, but Padilla was not accorded the same treatment for he was convicted and sentenced. At the second trial, both accused were convicted and sentenced. We held the convening authority erred in ordering a rehearing, but we went on to discuss double jeopardy. There, after dismissing the conviction of Jacobs, the Court stated:

"A more difficult question is posed in the case of petitioner Padilla. He was found guilty at the first trial. The Uniform Code of Military Justice, Article 44(b), supra, in prohibiting a second trial for the same offense, provides that 'No proceeding in which an accused has been found

guilty by a court-martial upon any charge or specification shall be held to be a trial in the sense of this article until the finding of guilty has become final after review of the case has been fully completed.' Here the findings of guilty did not become final. Petitioner Padilla could not, therefore, sucessfully claim double jeopardy at the second trial."

In line with the Code and the foregoing authority, the first proceeding in the case at bar which did not reach the sentencing stage never became final for jeopardy purposes.

There is, however, one further matter which is relevant in this case. Defense counsel goes on to argue that if charges are withdrawn because of a material variance, this is equivalent to a dismissal of an action because of insufficiency of the evidence. Counsel, in attempting to argue this untenable position, avoids contact with the only Code provision which could be determinative—Article 44(c). That subsection provides:

"(c) A proceeding which, after the introduction of evidence but before a finding, is dismissed or terminated by the convening authority or on motion of the prosecution for failure of available evidence or witnesses without any fault of the accused is a trial in the sense of this article."

This particular provision was designed to prevent a convening authority from affording the Government a second opportunity to convict an accused by dismissing a court before findings if he felt that the prosecution had not adequately proved its case and the trial might result in an acquittal. The Government could then gather more evidence and retry the accused with evidence which would insure a certainty of conviction. See Hearings, supra; United States v Stringer, 5 USCMA 122, 17 CMR 122 (opinion of Judge Latimer). If, as in this case, there is a finding of guilty, the convening authority would gain nothing by withdrawing the charges and ordering a retrial that he could not get by waiting until the termination of the proceedings and ordering a rehearing. Article 63, Uniform Code of Military Justice, 10 USC § 863. The intendment of Article 44(c) was to prevent withdrawals to save cases for the Government and not to prevent granting rehearings after findings where an order to that effect would give the accused a second chance to escape conviction. It is interesting to note that a dismissal for a material variance is not a withdrawal for insufficiency of evidence which precludes trying the accused again for the proper offense. This argument by defense counsel was discussed by Congressman DeGraffenried during the House hearings on the Code:

"You find cases where the allegation of the indictment is at variance. The proof might be at variance from the allegations of the indictment. For example, ownership might be laid in a person and when proof was introduced, ownership might be in another person; and even though the defendant had put in a plea of not guilty, and a witness for the State had been on the stand, they have held in those cases, *the indictment can be corrected by placing the ownership in the proper place, and defendant can be tried over again because he hadn't been placed in jeopardy of that particular ownership charge.*" [Hearings before House Committee on Armed Services on HR 2498, 81st Congress, 1st Session, page 803 (1949). Emphasis supplied.]

See also paragraph 55, Manual for Courts-Martial, United States, 1951. Furthermore, a holding that this referral to a new court was tantamount to a dismissal for lack of evidence would eliminate the doctrine of fatal variance, for when the former principle is employed, there is some essentially pleaded ingredient which is not established. In this instance, any argument that the Government did not prove an offense is specious. The only insufficiency was in the identity of accused's parent unit. Therefore, we conclude that the law officer properly denied the accused's plea of former jeopardy.

We pass now to the second granted issue which deals with the instructions

given to the court-martial on proof of the intention to desert. The Government, finding that these instructions are substantially similar to those condemned by this Court in United States v Cothern, 8 USCMA 158, 23 CMR 382, and United States v Soccio, 8 USCMA 477, 24 CMR 287, concedes error. The Government's concession is well taken. The decision of the board of review is reversed. The lesser included offense of absence without leave may be affirmed or a rehearing on the principal offense may be ordered.

QUINN, Chief Judge (concurring in the result):

Several aspects of the principal opinion require that I set out my views separately. First, I have always maintained that the men and women in our armed forces are entitled to all the rights granted to an accused by the Constitution of the United States, except those excluded expressly or by necessary implication. See my dissent in United States v Sutton, 3 USCMA 220, 11 CMR 220. In my opinion, therefore, a question of double jeopardy is not answered simply in terms of the provisions of Article 44, Uniform Code of Military Justice, 10 USC § 844. See United States v Bayer, 156 F2d 964 (CA2d Cir) (1946), reversed on other grounds, 331 US 532, 91 L ed 1654, 67 S Ct 1394; United States v Wells, 9 USCMA 509, 26 CMR 289. Secondly, the principal opinion relies upon two decisions to which I dissented. United States v Padilla, 1 USCMA 603, 5 CMR 31; United States v Stringer, 5 USCMA 122, 17 CMR 122. I am not persuaded that either recites a correct rule of law. In any event, the critical question here is whether, under the circumstances, the convening authority properly withdrew the charges from the court-martial.

The problem presented in the comments by the president of the court on announcing the findings of guilty was whether there was a fatal variance between the charge and the proof. That was a legal question to be decided by the law officer. Article 51(b), Uniform Code of Military Justice, 10 USC § 851; United States v Knudson, 4 USCMA 587, 16 CMR 161. It was error for the law officer, in effect, to refuse to rule on the motion to amend and to permit the convening authority to withdraw the charges on the ground of variance. However, the presence of error does not determine the disposition of the case. Still left for consideration is whether the error prejudiced the accused.

At the first trial the accused's counsel objected to the prosecution's motion to amend the specification to make it conform to the proof on the ground that the difference in organization was "a fatal variance." His argument was accepted, and made the basis for withdrawal of the charges. At the second trial, defense counsel interposed a plea of double jeopardy. In support of the plea, he maintained, in part, that the difference in allegation and proof did not "constitute a fatal variance at all." Since he was granted precisely the relief he asserted he was entitled to at the first trial, the accused cannot now assert he was prejudiced by the grant. Haugen v United States, 153 F2d 850 (CA9th Cir) (1946); Pratt v United States, 102 F2d 275 (CA DC Cir) (1939). As the Court of Appeals said in a similar situation in the *Haugen* case the accused cannot "blow hot and then cold." I fully agree with the remarks of District Judge Murphy in rejecting an argument similar to that advanced here. In United States v Harriman, 130 F Supp 198, 204 (SD NY) (1955), he said:

". . . Here defendant assumed the position that he would be prejudiced by a variance between indictment and proof, and that such variance was material in the course of the first trial. The same defendant now finds it expedient to characterize the variance as one that did not make discharge of the jury in the first trial a matter of evident necessity. To permit the safeguard against double jeopardy to bar a second trial whenever a defendant can successfully maintain one course in the first trial and its opposite in the second

one would nullify those 'ends of public justice' that the constitutional provision was designed to serve."

I conclude, therefore, that the motion to dismiss on the ground of double jeopardy was properly overruled by the law officer. I agree with the principal opinion in regard to the instructional error, and accordingly I concur in the result.

FERGUSON, Judge (concurring in the result):

I concur only in the result. It is my considered opinion it cannot be contended that a man who joins our armed forces and offers his person to fight for the Constitution and the institutions predicated thereon forfeits the fundamental guarantees granted to citizens generally, except those excluded by the Constitution expressly or by necessary implication, which this document affords the accused.

I am further of the opinion that there is no proper issue of double jeopardy in the present case since a fatal variance did exist in accused's first trial. At that trial he was charged with desertion from "Ordnance." He was never attached to "Ordnance" but to "Overseas Replacement Depot."