UNITED STATES, Appellee

v.

JOSEPH CHARLES RUSHLOW, Private First Class, U. S. Marine Corps, Appellant

2 USCMA 641, 10 CMR 139

LCDR John J. Nelson, USNR, for Appellant.
CDR E. L. McDonald, USN, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was tried and convicted by a general court-martial for violation of Article 85, Uniform Code of Military Justice, 50 USC § 679, desertion with intent to remain away permanently. He was sentenced to a bad-conduct discharge, forfeiture of $60 per month for sixteen months, and confinement for the same number of months. The convening authority reduced the forfeitures and confinement to ten months, suspended the execution of the bad-conduct discharge until accused's release from confinement or until completion of appellate review, whichever is the later, but otherwise approved. The board of review affirmed the findings and sentence as modified. We granted the accused's petition to determine the sufficiency of the evidence, and whether the instructions of the law officer were correct.

On December 10, 1951, the accused received a seventy-two hour pass from the Marine Barracks, U. S. ■ Naval Base, Boston, Massachusetts. He did not return upon the expiration of the pass, but was apprehended March 17, 1952, by officers of the Federal Bureau of Investigation. At the trial he elected to take the stand to testify in his own behalf and he related the following circumstances as his explanation for remaining away for a period slightly in excess of three months: Upon arriving at the home of his parents, he found his mother was in need of an operation; because of the financial difficulties of his parents he decided he would take a job to help out with the expenses but he was unable to secure a job until mid-January; the money he received was turned over to his father to help with the hospital bills, with the exception of a small amount which he kept for himself; on February 23, 1952, he married a girl he had known for some time, and this necessitated finding an apartment for them; even though married he still gave about half of his earnings to his father; he did not intend to desert the service, but intended to return to his organization when his brother was discharged from the service, and was able to come home and help with the financial burdens; his brother's discharge was expected in March and he was, in fact, released from duty as expected but his return home was only two days prior to the time accused was apprehended; due to the short period of time the brother was unable to secure a job; during most of his absence the accused attired himself in civilian clothes, but did on occasions wear his uniform; both his parents and his wife's parents knew he was a member of the armed services, but they did not question his long absence, and he did not volunteer any information on the subject; and, he informed his wife he was absent from the service and would return when his brother was released.

We shall first direct our attention to the question of whether the evidence is sufficient to sustain the finding of guilty. We entertain no question that it is. The evidence shows a prolonged absence of ninety-seven days in the near vicinity of military installations, which was terminated by apprehension. Those facts alone might be ample, for we have held a shorter absence under similar circumstances, not satisfactorily ex-

**643**

plained, to be sufficient. United States v. Ferretti (No. 213), 1 USCMA 323, 3 CMR 57, decided April 18, 1952; United States v. Knoph (No. 605), 2 USCMA 108, 6 CMR 108, decided December 31, 1952. There is, however, additional testimony furnished by the accused, which established that he had obtained civilian employment during his absence, married, taken an apartment, settled down, and generally converted his way of life to that of a civilian. When considered in toto, there is ample evidence to sustain the verdict.

While the accused took the stand, declared he did not intend to desert and explained his reasons for the prolonged absence, his explanation was rejected by the court-martial. It had a right to do that, as a court-martial is not compelled to accept an unconvincing excuse by an accused for a much prolonged absence. Whether we might be inclined to believe or disbelieve the story related by him is of no importance. The duty to accept or reject it is the prerogative of the court-martial members and they resolved the issue against the accused.

The second assignment of error requires a look at the instructions. During the course of informing the court members on the law, the law officer read the following sentence from the Manual for Courts-Martial, United States, 1951:

". . . A purpose to return, provided a particular but uncertain event happens in the future, may be considered as an intent to remain away permanently. . . ."

This particular sentence is inartfully drawn and should not be made the subject matter of the instruction. In this setting it was prejudicial. In making that determination we are required to assume the court-martial members could have believed the story as related by the accused. On its face it was not inherently improbable or unworthy of belief. Evaluating the evidence as credible, there seems to have been one principal uncertain event wrapped up in accused's story and this was his brother's relief from active duty with the military service. That event was interwoven with subsequent employment and contribution by the brother to the father and mother but for our purposes we shall consider them as one contingency. Accused's testimony established that his brother had been released but it was so near in point of time to accused's apprehension that the other related conditions could not have reasonably been complied with and, therefore, we cannot hold the uncertainty had become fixed. The instruction thus told the court members that if they believed the accused had a purpose to return, but that this purpose was conditioned upon his brother's relief from active duty, and contributions to the support of the family, it might find the accused intended to remain away permanently. The instruction did not require that that factor be considered with other relevant evidence of intent in the record as it stated that his intent not to return could be gathered from that fact alone. To inform a court it could so find seems to be converting a probable intent to return to the service into an intent not to do so. The practical effect of such an instruction was to render the accused's explanation no more than a judicial confession and its legal effect was to announce a new rule of law, that is, specific intent to remain away may be established by proving an intent to return if the latter is based on a contingency. Accused's only defense was predicated upon a qualified intent to return to the service but the members of the court-martial were instructed that this mental condition could be considered as equivalent to one which purposed an intent to remain away forever. While an intent to return based on a contingency might be rejected as a defense to a crime otherwise established, it is difficult to support a statement to the effect that it establishes an essential element to remain away permanently when it has a tendency to prove the opposite. Assuming the Manual sentence might be a correct statement of the law under some conditions, a view we do not advocate, they are not present here.

The Government concedes the sentence does not state accurately the law

644

on this subject but argues that it was not prejudicial because of other instructions. We concede the rule that we must construe the instructions in their entirety, but this rule is not helpful in this case. The instructions relied on for corrective purposes followed immediately the questioned sentence and they were:

". . . However, in order to find a man guilty of desertion, there must have been proved to the court beyond reasonable doubt that he did, either at the inception of his absence or at some time during his absence, have an intention to remain away permanently from his place of duty or service, or from his organization.

. . . . . . .

"If the condition of absence without proper authority is much prolonged and there is no satisfactory explanation of it, the court will be justified in inferring from that alone an intent to remain absent permanently. . . ."

The reason the first quoted paragraph does not correct the error is because it merely requires that the Government prove beyond a reasonable doubt that the accused deserted. This goes to the burden of proof and in no way renders harmless the statement that this amount of proof may be furnished by an intent to return based on a contingency. Both parts of the instruction could be reconciled and given force and effect by literal application if the former stated the law correctly. The one part furnishes the evidentiary base for the intent, the other furnishes the rod to measure the base for adequacy. The second quoted paragraph likewise fails to cure the error. It merely states a different standard for inferring intent but does not modify or change the incorrect standard set out in the other part of the instruction.

The decision of the board of review is reversed and the record is returned to The Judge Advocate General of the Navy with instructions to return to a board of review for reconsideration of a lesser included offense or for a rehearing.

Chief Judge QUINN and Judge BROSMAN concur.