UNITED STATES, Appellee

v

MALCOLM ROBERT GARDNER, Airman Apprentice,
U. S. Navy, Appellant

9 USCMA 48, 25 CMR 310

No. 10,135

Decided March 21, 1958

*Major R. D. Humphreys*, USMC, argued the cause for Appellant, Accused.

*Lieutenant Colonel Charles H. Beale, Jr.*, USMC, argued the cause for Appellee, United States.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

This appeal challenges the effectiveness of the accused's representation by his appointed counsel.

The accused was brought to trial before a special court-martial on three specifications of larceny, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921 (Charge I), and one specification of failing to obey an order, in violation of Article 92, 10 USC § 892 (Charge II). He was represented by two officers who were appointed defense counsel and assistant defense counsel, respectively. They were not lawyers in the sense of Article 27 of the Uniform Code.

After arraignment, defense counsel entered a plea of guilty to each of the specifications of Charge I and a plea of not guilty to Charge II and its specification. As soon as he announced the pleas, he requested a "short recess." The request was granted and the court recessed for five minutes. On reconvening, defense counsel asked to change

48

the plea to accord with what "the accused desires." The new plea changed the plea of guilty to specification 1, Charge I, to not guilty; in other respects it was the same as the original. The president of the court thereupon reiterated the pleas, and explained the effect of a plea of guilty to the accused. He also advised the accused that he was entitled to plead not guilty and have the Government prove his guilt. In response to questions put to him by the president, the accused indicated that he understood the meaning and effect of a plea of guilty and that he desired to adhere to his plea.

To prove the two offenses to which the accused pleaded not guilty, the prosecution called two witnesses. One testified in connection with Charge II; the other, Lieutenant T. G. Harty, testified to a pretrial statement made by the accused regarding the circumstances of specification 1, Charge I, which alleges that the accused stole an allotment check belonging to Lora Butt, the wife of a Navy Aviation Machinist.

In the statement to Lieutenant Harty, the accused said that Mrs. Butt roomed with his wife and himself. When she moved, she asked the accused to forward her mail to her new home. Several weeks later, the accused picked up her allotment check at the Foley (Alabama) Post Office. He signed and cashed the check. Some of the proceeds were used to pay his bills and the remainder was spent on what "was more or less a honey moon" for his wife. He maintained that he did not think that he would have "gone so far" in using the money "if it wasn't that my wife had her heart set on a vacation and cried" when it appeared that they would not have enough money. "I want," said the accused, "to pay back the money to Lora Butt and hope to make some kind of arrangement with her."

When the prosecution rested, defense counsel made a brief statement in which he indicated that he intended to prove certain facts in regard to Charge II. He further indicated that "after consulting" Article 121 of the Uniform Code he was going to try "to answer the question" of whether the accused wanted to keep the money "in a permanent fashion." He called the accused and his wife as witnesses. The accused testified initially only on Charge II, of which he was ultimately acquitted. Defense counsel then asked permission to "renew an examination" in regard to the larceny specification. By appropriate questions he had the accused review his acquaintanceship with Mrs. Butt, and led him through a restatement of the substance of his pretrial confession. The only material questions which bear upon the "permanency" of the accused's taking, which counsel said he would try to answer, are as follows:

"Q. Upon taking this money to the bank, what was your purpose?
"A. Well, I have $500.00 up home in bonds and we owed a lot of bills and we were going home on leave to get the money, and I did not see anything wrong with taking the money to her.
"Q. Your intentions were to do so?
"A. Yes, sir.
"Q. You have sent $91.30 to Mrs. Butts.
"A. I have, sir."

Most of Mrs. Gardner's testimony is irrelevant to the issues. Asked whether she knew to what use the accused had put the proceeds of the check, she replied that she "only found out the other day," and that it went "to pay gas bills and to finance" a trip to Lansing, Michigan.

Unquestionably skilled counsel would not have allowed the accused and his wife to testify in regard to specification 1. The prosecution's case consisted only of a pretrial statement by the accused. Without independent evidence that the offense charged had probably been committed, this showing did not establish a *prima facie* case of guilt. United States v Mims, 8 USCMA 316, 24 CMR 126. However, with the accused's judicial admissions the evidence is clearly sufficient to support the findings of guilty. United States v Shell, 7 USCMA 646, 23 CMR 110; United States v Rushlow, 2 USCMA 641, 10 CMR 139. This raises the question whether defense counsel's conduct in the case was "so tainted with negli-

gence" (United States v Hunter, 2 USCMA 37, 41, 6 CMR 37), or demonstrates such "palpable inexperience" (United States v Dupree, 1 USCMA 665, 670, 5 CMR 93), as to amount to a denial of the effective assistance of counsel. The matter is not one which lends itself to an easy solution. Each case must be decided upon its own facts. United States v Allen, 8 USCMA 504, 25 CMR 8. Here, the facts divided the board of review below.

The Government describes the alleged inadequacies of defense counsel as "tactical indiscretions." Among other things, it argues that the change in plea might have resulted simply from a "sudden change in tactics at the whim of the accused." It is distinctly possible that the change in plea resulted from the sudden disposition of the accused, but even if we attribute the change to him we must still consider counsel's actions in the later stages of the trial. What makes the problem particularly difficult is that we are dealing with both sophisticated aspects of the law and persons who are untrained in the law. Considerable training and experience in the conduct of a trial is necessary to learn that a confession is not ordinarily admissible until independent evidence of the probable commission of the offense has been introduced, Manual for Courts-Martial, United States, 1951, paragraph 140*a*; United States v April, 7 USCMA 594, 23 CMR 58; that a motion for a finding of not guilty is appropriate when the prosecution has failed to make out a *prima facie* case; and that evidence presented by the defense can be used to fill in gaps in the prosecution's case. United States v Shell, supra. In reading this record of trial, we are convinced that the appointed defense counsel did as well as they could, but their knowledge of the law relating to the case on trial was so deficient as to result in inadequate representation of the accused on specification 1.

In United States v Best, 6 USCMA 39, 19 CMR 165, we pointed out that under ordinary conditions a denial of the effective assistance of counsel affects the entire proceedings. However, we also noted that "different factual settings . . . may have different effects." *Ibid*, page 45. The accused pleaded guilty to two specifications alleging thefts which were entirely unrelated to the contested issues. He does not contend that he entered the plea of guilty upon the mistaken advice of counsel; nor does he say that he has any valid defense to those charges. The record of trial shows that he had explained to him the meaning and effect of the plea by the president of the court, and he persisted in it. And he was sufficiently well-defended on Charge II to obtain an acquittal. These circumstances, coupled with the nature of counsel's deficiency, demonstrate that counsel's lack of assistance was confined to his representation of the accused on specification 1. Consequently, the interests of justice do not require that we set aside the findings of guilty as to which the accused entered a plea of guilty.

The findings of guilty of specification 1 of Charge I and the sentence are set aside. The record of trial is returned to The Judge Advocate General of the Navy for resubmission to the board of review. In its discretion, the board of review may dismiss specification 1 and reassess the sentence upon the basis of the remaining findings of guilty, or order a rehearing on the specification and the sentence.

Judge FERGUSON concurs.

LATIMER, Judge (dissenting):

I dissent.

By what standard do we measure adequate representation by counsel when an accused is not represented by a certified lawyer? That is the question of moment in this case. The majority find defense counsel inadequate as to one specification and competent as to others, but I am unable to decide what measuring rod is used. Congress authorized non-lawyers to try special court-martial cases, so the standard of representation could not be greater than that possessed by average officers not learned in the law. If that is the touchstone, this defense counsel has met the test and his client has no just cause for complaint. However, if other

yardsticks are to be prescribed by the Court then they should be explicitly proclaimed.

The accused was tried on three specifications of larceny, in violation of Article 121 of the Code, 10 USC § 921, and one specification of disobedience of orders, contrary to Article 92 of the Code, 10 USC § 892. He originally pleaded guilty to the crimes of larceny and not guilty to the remaining offense. Thereafter he substituted a plea of not guilty to one larceny specification—and one involved in this appeal—and stood trial. He ended up not entirely without success for the court-martial found him guilty of the larceny but not guilty of violating the lawful order. It would appear from his result that counsel's efforts were not futile, but his day's work, when measured by a majority of this Court, is rated partly adequate and partly inadequate. In the light of his accomplishments, and the inconsequential effects of his error, if there were one, I would go the whole way and find that he adequately represented the accused.

I take the position that when defense counsel is not an attorney, he cannot be expected to possess the technique of certified counsel and his tactics may not always reach the level of a well-trained criminal lawyer. But I suspect that when enacting the Uniform Code of Military Justice, members of Congress well knew that trials before special courts-martial would not be in accordance with the highest tradition of courtroom procedure, for the Code contemplates trials in those forums without the assistance of legal specialists. However, in this instance, the record satisfies me that, at most, this officer only failed to require the prosecution to corroborate a confession before he placed the accused on the witness stand. For reasons which I will more fully develop, that is not a palpable error of judgment.

The accused, prior to trial, had made a statement in which he admitted all elements of the offense with the possible exception of the criminal intent. In the light of his admissions, the only possible hope for any defense that is suggested remotely by any information gleaned from the papers in this file had to be founded upon a mistake of fact. In his statement, there is some suggestion that the accused believed his relationship with the victim, coupled with her request for his assistance in obtaining the check when issued, authorized him to negotiate the instrument, use the proceeds, and reimburse the payee with other funds—not a strong defense, but certainly the best available.

To establish that type of defense, it was essential that the accused admit the taking and use of the proceeds because he could not contend on the one hand that there was no conversion and on the other hand assert that he used the proceeds of the check innocently because he was mistaken about his authority. Therefore, to get the maximum benefit from accused's prior statement and to exploit successfully his only hope for success, defense counsel may have chosen not to require the Government to present its entire case. That is a defensible position to take because good results are sometimes obtained by electing to defend on the strength of a client's testimony and not by relying on the weakness of the prosecution. Many top-flight lawyers admit matters which are certain of proof to go straight to the heart of their defense. However, assuming arguendo that the best representation may have decreed the other alternative, that is not to say that the choice made in this instance was without foundation in logic or reason.

Of course, I must meet the argument that defense counsel could have made a motion for a finding of not guilty and thus have given his client two chances for success. Even in that regard I am unwilling to concede incompetency, for taking the first chance might have been ruinous. Had defense counsel moved for a dismissal and thereby forced the Government to call the victim to the witness stand, I am certain she would have destroyed every hope the accused had to raise a reasonable doubt in the mind of the court about his intent. She would have laid to rest any doubt about his authority to use her funds. That alone would justify defense counsel in not shadow-

boxing over ingredients which are unimportant to his defense.

Perhaps I will be charged with over-speculating the capabilities of this counsel. If so, I can only say that when this Court enters the field of inadequate representation without the benefit of knowing the facts which motivate trial defense counsel, the whole area becomes conjectural. Obviously, I make no pretense of knowing precisely why defense counsel chose the strategy he did. Neither do I pretend to know why a plea of guilty was changed to one of not guilty, but I can assume that whatever reasons counsel had, they were free from negligence or wrongful motives and I refer to the briefs of the parties to support that statement. Why then, I ask, is it necessary for this Court to speculate that he was so ill-equipped for his task that he afforded his client a trial that was a hollow and empty gesture? Instead of conjecturing in that vein, I believe we should take into account that trial tactics are dictated by many factors not reflected in a record and that based on information in his possession, trial defense counsel may well have pursued a proper course. Corroborating testimony is required principally to avoid the possibility of a person confessing and being convicted of a crime he did not commit. Its production would only help the prosecution and its absence would benefit the accused. While on appeal it may seem to us that other tactics are preferable to those used at trial, it is to be remembered that we are uninformed about many variables known to persons participating in the trial proceedings. By way of illustration, apparently the accused had changed his mind about pleading guilty, and that set the stage for a trial on the merits. In the light of that development, it is highly probable that the Government could have presented good grounds for a continuance if a motion had been made, and then accused would have foreclosed his only hope for success.

Since Congress has provided for trial by special courts-martial, untrained counsel must have some latitude in choosing their method of defense and, as long as I am forced to speculate, in this instance I reach the conclusion that this counsel made an acceptable choice. If he did not and was inadequate for the purpose of advising on one specification, then I have great difficulty in reconciling the holding that he was competent to advise the accused on the specifications to which pleas of guilty were entered. Be that as it may, as I interpret our holdings, an error in judgment is not the equivalent of inadequacy. Particularly is that true in a special court-martial trial.

I would affirm the decision of the board of review.