UNITED STATES, Appellee

v

JAMES A. RAWDON, Private E-2,
U. S. Army, Appellant

9 USCMA 396, 26 CMR 176

No. 10,901

Decided June 20, 1958

*First Lieutenant Neil Flanagin* argued the cause for Appellant, Accused. With him on the brief were *Captain John F. Christensen, Major Frank C. Stetson,* and *First Lieutenant Lawrence R. Fullem.*

*First Lieutenant Jon R. Waltz* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel John G. Lee.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

What transpired between the accused and the law officer in an out-of-court inquiry is made the basis for the present appeal.

When the accused pleaded guilty to the charges, the law officer called for an out-of-court hearing with both counsel and the accused. At the hearing he inquired whether there was a "negotiated plea." Informed that there was, he ascertained that the accused had offered to plead guilty because he "knew that . . . [he] was wrong" and that he deserved punishment. The law officer also determined that the maximum sentence which the convening authority had indicated he would approve was considered by the accused to be "fair." Trial and defense counsel were then told to withdraw from the courtroom. On their departure, the law officer asked the accused if he was "completely satisfied in every way with the counsel that has been appointed to defend you." The accused replied in the affirmative. Asked whether he was "satisfied" with counsel's "services," he again answered, "yes." The out-of-court hearing was terminated and court was reconvened. The trial proceeded to conviction and sentence. The accused now contends that the court-martial lost jurisdiction over the case because his counsel was not present during the private hearing he had with the law officer. Alternatively, he maintains he was deprived of military due process.

Whatever the advantages or the dangers of a negotiated plea,[1] there is manifestly no substance in either aspect of the accused's contention. Considering the alternative first, a denial of due process exists when an accused is tried under such circumstances as to violate the standards of fundamental fairness which are part of American criminal law. The hearing between the law officer and the accused here was patently not unfair. Obviously, it originated in the law officer's desire to assure himself that the accused had faith and confidence in the counsel who had been appointed to defend him. Implicit is the idea that if the accused was dissatisfied with the appointed counsel, the law officer would have another appointed to replace him. It is clear beyond quibble the law officer believed accused would feel freer to express his opinion out of, rather than in, counsel's presence. The accused had pleaded guilty to four serious offenses which

---

[1] See United States v Welker, 8 USCMA 647, 25 CMR 151. Other difficulties with the negotiated plea appear in such cases as United States v Tripp, GCM NCM 58–00267, March 20, 1958, and United States v Daring, CM 398743, April 7, 1958.

subjected him to confinement at hard labor for almost 16 years. It was incumbent upon the law officer to ascertain that the accused was acting voluntarily and with full knowledge of the consequences of his plea. Since the advice of counsel often provides the basis for an accused's decision in a matter of this kind, the law officer had good reason to inquire into the accused's attitude toward his appointed counsel. In some respects, the inquiry may have been premature. Not until the trial is over and the case submitted to the convening authority for review[2] is the accused really in a position to say that he is "satisfied" with counsel's representation of him. See United States v Sarlouis, 9 USCMA 148, 25 CMR 410. But premature or not, the purpose and effect of the inquiry was to give the accused an opportunity to think consciously about, and to express himself on, the counsel assigned to defend him. Certainly, a pleasurable relationship need not exist between the accused and his appointed counsel. And even if it did exist, it would not necessarily establish the degree of professional competency on the part of counsel which the law requires. From any viewpoint, however, the law officer's private talk with the accused about his personal satisfaction with appointed counsel was in the interest of, not in deprivation of, a fair trial.

The jurisdictional part of the accused's argument distorts the purpose and scope of the hearing. The questions were intended to elicit nothing

more than an expression of the accused's opinion about his appointed counsel. Obtaining a statement on that matter is no part of the proceedings against the accused. We suppose that if the accused had said he had the best lawyer in the service, he would not thereby be precluded from attacking the validity of his conviction on the ground of a demonstrated lack of effective legal assistance. Cf. United States v Long, 5 USCMA 572, 18 CMR 196. Considering the laudable purpose of the procedure followed by the law officer, we cannot even say that it is improper. In any event, it has no jurisdictional consequences. It did not destroy the qualification of the accused's counsel, and it did not deprive him of counsel's effective assistance at any stage of the proceedings *against* him. But assuming that counsel should have been allowed to remain with the accused, the accused was deprived of his counsel's assistance only for the inquiry. If anything detrimental to the accused had transpired, the error would provide a basis for corrective action to the extent necessary to eliminate the harm, but it would not deprive the court-martial of power to proceed to findings and sentence. United States v Gardner, 9 USCMA 48, 25 CMR 310; United States v Best, 6 USCMA 39, 19 CMR 165.

The decision of the board of review is affirmed.

Judge LATIMER concurs.

Judge FERGUSON concurs in the result.

[2] See Article 38(c), Uniform Code of Military Justice, 10 USC § 838.